## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| AMA REALTY LLC, a New Jersey Based Limited Liability Corporation, | : | Civ. No. 13-457 (KM)(MCA) |
| Plaintiff, | : | |
| | : | |
| v. | : | OPINION |
| | : | |
| 9440 FAIRVIEW AVENUE LLC, NORTH BERGEN ASPHALT LLC, JOSEPH M. SANZARI INC., JOSEPH M. SANZARI, TIMOTHY MURRAY, jointly, severally, and individually, and TILCON NEW YORK INC. | : | |
| | : | |
| Defendants. | : | |

**KEVIN MCNULTY, U.S.D.J.:**

Plaintiff AMA Realty LLC alleges that the Defendants have environmentally ravaged its riverfront property in North Bergen, New Jersey. Plaintiff's central allegation is that several of the defendants formed a corrupt enterprise which leased Plaintiff's property and then furtively dumped hazardous waste and/or toxins onto the property. Plaintiff has brought various common law claims along with federal law claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, and the Clean Water Act, 33 U.S.C. § 1251. (First Amended Complaint [ECF No. 31] at First, Second, and Sixth Counts). There are two currently pending motions to dismiss [ECF Nos. 33, 38] which require me to address the sufficiency with which the federal claims have been pled. As set forth below, I will **DENY** these motions in their entirety.

**Factual Allegations**

Plaintiff owns real estate at 9501 Fairview Avenue in North Bergen, situated at the intersection of two waterways which feed the Hackensack River (the "Property"). (First Amended Complaint ("FAC") ¶ 1). Plaintiff and Defendant 9440 Fairview Avenue LLC ("9440 LLC") entered into a 10-year lease for the use and occupancy of the Property and the commercial structure thereon. The lease was signed by Defendant Joseph M. Sanzari and commenced July 1, 2007. (*Id.*). Among other things, 9440 LLC promised not to alter the property or structure without the express written permission of Plaintiff. (*Id.* at ¶ 3).

9440 LLC, together with Defendants Joseph M. Sanzari, Joseph M. Sanzari Inc., and Timothy Murray, allegedly owned and/or controlled Defendant North Bergen Asphalt LLC ("NBR"), which engaged in the business of recycling asphalt and concrete. (*Id.* at ¶¶ 4-5).[1] NBR was based next door to the Property, at 9440 Fairview Avenue, and conducted operations at another adjacent property, 9505 Fairview Avenue. (*Id.*). After 9440 LLC leased the Property, NBR expanded its operation onto the Property (*id.* at ¶ 5)(Dfd's Br. at 2). It continued until abandoning the premises in December 2011. (*Id.* at ¶ 6).

NBR's operations require New Jersey Department of Environmental Protection (NJDEP) approval. NBR held a "Class B" permit from the NJDEP to recycle asphalt and crushed concrete next door at 9505 Fairview, but allegedly failed to notify NJDEP or obtain a permit allowing it to do the same thing on the Property. (FAC at ¶¶ 5-6).

Plaintiff alleges that NBR and its owners or operators, 9440 LLC, Sanzari, Sanzari Inc., and Murray (collectively with NBR, the "NBR Defendants") "engaged in filling in protected wetlands in an unauthorized expansion of the [P]roperty at 9501 Fairview Avenue[, and] also dumped contaminated and/or hazardous materials directly into Bellman's Creek and Wolf's Creek." (Complaint ¶ 7). In addition, "Defendants, by and through [NBR], engaged in a deliberate scheme to defraud Plaintiff and various government agencies while keeping their illegal activities hidden from same." (*Id.* at ¶ 8). In fact, the Complaint alleges, the NBR Defendants worked in conjunction with a company called Pure Earth, itself banned from removing waste from New York City and from bringing waste to Pennsylvania because of its "ties with organized crime," to utilize 9505 Fairview and the Property as a way-station for Pure Earth to deposit New York City construction debris bound for Pennsylvania. (*Id.* at ¶ 9).

In the course of these operations, the NBR Defendants allegedly dumped contaminated or hazardous materials onto the Property, "including but not limited to, Beryllium, Benzo(b)Flouranthene...Benzene A Pyrene, Mercury, and Lead and others in excess of State limits." (*Id.* at ¶ 11). Further, the NBR Defendants, before abandoning the Property during the lease period, "environmentally devastated Plaintiff's property and the affixed structure through the continuous and systematic dumping of approximately 6000 cubic meters of contaminated and/or hazardous fill." (*Id.*at ¶ 12). Plaintiff says that the NBR Defendants' "unlawful dumping caused a change of the grade of the property, from where it previously sloped away from the building toward the wetlands, to a slope now directed toward the building...in radically altering the topography of Plaintiff's property, [the NBR Defendants] ha[ve] caused the flooding of the affixed structure whenever it rains. In an effort to alleviate and conceal the flooding issue[,] Defendants, without Plaintiff's knowledge and/or consent, wrongfully installed storm drains on the leased property." (*Id.* at ¶ 11).

---

[1] Murray, for his part, is allegedly a director of NBR, and son-in-law to the lease signatory, Sanzari. (*Id.* at ¶ 4).

The NBR Defendants have never received NJDEP permission and have failed to report the residual waste deposited on the Property in annual certifications to the NJDEP. (*Id.* at ¶¶ 41, 44, 46-47, 55).

The NBR Defendants actions have allegedly "placed Plaintiff in legal peril" and rendered the Property "un-rentable and/or unsaleable with little value, no value, or negative value until length and costly remediation upon the land and affixed structure are completed." (*Id.* at ¶¶ 13, 54).

Plaintiff asserts the following causes of action against the NBR Defendants: 1) RICO, with NBR as the "enterprise" and mail fraud as the "racketeering activity"; 2) RICO Conspiracy; 3) Breach of lease; 4) Negligence; 5) Unjust enrichment; 6) Citizen's suit under the Clean Water Act, 33 USC § 1365, and 7) Fraud. It separately asserts a claim of private nuisance against Tilcon. Plaintiff seeks punitive damages on all of its claims.

**Defendants' Motions to Dismiss**

The NBR Defendants seek dismissal pursuant to Fed. R. Civ. P. 12(b)(6), arguing that Plaintiff's First Amended Complaint: (A) insufficiently alleges RICO standing, that is, a concrete injury to business or property; (B) insufficiently alleges at RICO predicate acts (racketeering conduct); (C) insufficiently alleges harm resulting from any predicate act; (D) Fails to "properly" allege that defendants "conducted the affairs of the enterprise[;]" (E) Fails to make out a conspiracy claim because there is no valid underlying RICO claim; (F) fails, with respect to the Clean Water Act claim, to precisely allege compliance with the statutory pre-suit notice process; (G) alleges only "wholly past" violations, such that the suit is legally barred; and (H) seeks only non-injunctive relief, also warranting a legal bar.

NBR apparently sold the 9505 Fairview property to defendant Tilcon New York Inc. Tilcon separately moves to dismiss [ECF No. 38, 48], arguing that if the federal claims against the NBR defendants are dismissed, then the Court would have no subject matter jurisdiction over the state law claims against Tilcon. Because I am denying the motion to dismiss the federal claims, I will deny Tilcon's motion as well.

**Analysis**

Under Federal Rule of Civil Procedure 12(b)(6), the Court may dismiss a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). On such a motion, the well-pleaded factual allegations of the complaint must be taken as true, with all reasonable inferences drawn in plaintiff's favor. *Phillips v. County of Allegheny,* 515 F.3d 224, 231 (3d Cir. 2008).

3

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of [his] 'entitlement to relief' requires more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, demonstrating that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Servs., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). This entails "plead[ing] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678. Stated differently, in reviewing the well-pleaded factual allegations and assuming their veracity, this Court must "determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

Further, for claims sounding in fraud, Fed. R. Civ. P. 9(b) imposes a heightened pleading requirement, over and above that of Rule 8(a). Specifically, it requires that "in all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). "Malice, intent, knowledge, and other conditions of a person's mind," however, "may be alleged generally." *Id.* In practice, and as explained where applicable *infra*, this rule requires pleadings that put a defendant "on notice of the precise misconduct with which it is charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

## A. Plaintiff has sufficiently alleged concrete injury sufficient for RICO Standing

"[A] plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation [of RICO]." *Maio v. Aetna*, 221 F.3d 472, 483 (3d Cir. 2000) (quoting *Sedima v. Imrex Co.*, 473 U.S. 479, 496 (1985)). This is satisfied "by allegations and proof of actual monetary loss, i.e., an out-of-pocket loss." *Id.*

The NBR Defendants contend that Plaintiff fails to allege a "concrete financial loss" sufficient to confer RICO standing. They say that "Plaintiff has not alleged that it has spent any money in response to any action by the Defendants," has not "set out concrete allegations of quantifiable financial injury," or "identif[ied] monies that it has currently lost." (NBR Dfd's Br. at 5-6).

These contentions are mystifying. Plaintiff alleges that the NBR Defendant's actions have caused it to "sustain[] significant monetary damages," and "left [it] with property that is un-rentable and/or unsaleable with little value, no value, or negative value until lengthy and costly remediation upon the land and affixed structure are completed." (First Amended Complaint ¶ 13). This allegation is a common refrain throughout the First Amended Complaint. (*See*

4

*id.* at ¶¶ 54, 64, 75, 87). Plaintiff articulates that it "has incurred several million dollars of damage and will continue to suffer substantial damages unless and until extensive environmental remediation is performed upon the property and the affixed structure." (*Id.* at ¶¶ 64, 75). Plaintiff has also estimated its damages in conjunction with its proposed RICO case order, an optional filing "equivalent to a supplemental pleading" which summarizes damages "with specificity." (*See* ECF No. 4-1, 4-2). I conclude, therefore, that Plaintiff has alleged concrete financial losses.

## B. Plaintiff has sufficiently alleged RICO conduct (predicate acts)

A RICO claim brought pursuant to 18 U.S.C. § 1962(c) requires a predicate act constituting racketeering activity. Here, Plaintiff claims that mail fraud, in violation of 18 U.S.C. § 1341. The issue is how particularly a plaintiff must plead this predicate act.

"To state a claim for mail fraud under 18 U.S.C. § 1341, a plaintiff must allege: "(1) the existence of a scheme to defraud; (2) the use of the mails, whether the United States Postal Service or a private carrier, *in furtherance of* the fraudulent scheme; and (3) culpable participation by the defendant (i.e., participation by the defendant with specific intent to defraud)." *Care One Mgmt., LLC v. United Healthcare Workers East, SEIU* 1199, 2013 U.S. Dist. LEXIS 147119, *31-32 (D.N.J. Oct. 10, 2013)(Wigenton, D.J.)(citing *United States v. Dobson*, 419 F.3d 231, 237 (3d Cir. 2005))(emphasis added). "Further, when mail fraud is alleged as a predicate act, a plaintiff must plead the elements of mail fraud and satisfy the Rule 9(b) heightened pleading standard." *Id.* (citing *Warden v. McLelland*, 288 F.3d 105, 114 n.6 (3d Cir. 2002)).

In the context of a mail-fraud-based RICO claim, Plaintiffs must "clearly articulate a pattern of such activities [mail fraud] and how the communications contributed to the alleged fraudulent scheme." *Care One Mgmt*, 2013 U.S. Dist. LEXIS 147119 at *34. Plaintiffs may select any appropriate method of "injecting precision and some measure of substantiation into their allegations of fraud.'" *Ford Motor Co. v. Edgewood Props.*, 2009 U.S. Dist. LEXIS 4172, *57-58 (D.N.J. Jan. 20, 2009) (Salas, M.J.) (quoting *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)).

Here, Count One of the First Amended Complaint alleges (1) the existence of a scheme to defraud (FAC ¶ 63), (2) using the mails to further same (*id.* at ¶ 62) and (3) culpable participation by the Defendants (*id.* at ¶¶ 63, 64, 65). Thus, the elements of mail fraud have all been pled.

Furthermore, those elements are pled with particularity. Count One sets forth precise details concerning the alleged fraud, listing four specific dates and communications by NBR to the NJDEP that "intentionally omit[ted] any reference to residual material remaining from the recycling process and the

5

manner of its disposal." (*Id.* at ¶ 62). The circumstances of the fraud are evident from the factual allegations, *e.g.,* that NBR dumped contaminants and committed other actions on the Property without an NJDEP permit, without informing NJDEP, and without informing Plaintiff, the owner. (*See id.* at ¶¶ 8, 10, 46-49, 51-53). Overall, then, Plaintiff has sufficiently pled predicate acts of racketeering.

The NBR Defendants make much of what they perceive to be a lack of specification as to their individual roles on the alleged fraud. However, the First Amended Complaint alleges that each and every NBR Defendant, *inter alia,* "owned and/or controlled" NBR (*id.* at ¶ 4), "created, formed and registered [NBR]," (*id.* at ¶ 31), "engaged in a deliberate scheme to defraud Plaintiff and various government agencies while keeping their illegal activities hidden," (*id.* at ¶ 8), and critically, "[was] associated with the enterprise" and committed and caused to commit a series of overt acts in furtherance of the conspiracy including, but not limited to[,] the acts set forth in Count One of the Complaint." (*Id.* at ¶¶ 73-74). Each NBR Defendant is named individually, and the Complaint alleges that each committed or caused the commission of NBR's fraudulent mailings. (*Id.* at ¶¶ 62, 73-74). Each of the NBR Defendants, as the owners or managers of NBR, allegedly participated in the mail fraud. The Complaint gives all of them notice "of the precise misconduct with which they are charged." *See, e.g., Seville,* 742 F.2d 786, 791-792; *see also Frederico v. Home Depot,* 507 F.3d 188, 200 (3d Cir. 2007); *Lum v. Bank of America,* 361 F.3d 217, 223-224 (3d Cir. 2004)); *Kress v. Hall-Houston Oil Co.,* 1993 U.S. Dist. LEXIS 6350, *17-22, 34-35 (D.N.J. May 12, 1993); *Edgewood* at *57-62.

### C. Plaintiff alleges that it was harmed by the predicate act

"[N]ot all factually injured [RICO] plaintiffs may recover," but only those who show injury "by reason of" a RICO violation. *Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639, 654 (2008). The "central question" is "whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451, 461 (U.S. 2006) (quoted by *Bridge* at 654). It must be kept in mind that "[i]n cases predicated on mail fraud...[t]he gravamen of the offense is the scheme to defraud," and that the mailing element is satisfied by "any 'mailing that is incident to an essential part of the scheme[.]" *Bridge* at 647 (quoting *Schmuck v. United States,* 489 U.S. 705, 712 (1989)).

The NBR Defendants argue that Plaintiff has not pled the requisite causation because the fraudulent mailings were sent to NJDEP, not the Plaintiff. This argument totally misses the lesson of *Bridge.* There, a victim of the defendant's bid-rigging scheme alleged predicate acts of mail fraud. The mailings were notices that bid-winners were legally required to send to homeowners. *See id.* at 643-645. The Supreme Court rejected the argument that causation failed because third parties, as opposed to plaintiffs relied on the information in the mailings. The mailed notices were in furtherance of a scheme

6

to defraud, the direct consequence of which was the plaintiff's alleged injury. *Id.* at 657-658; *see also Anza* at 461.

The same holds here: the NBR Defendants' mailings were allegedly designed to perpetuate and further their concealment of illegal discharges on Plaintiff's Property. There appear to be no "independent factors" causing Plaintiff's alleged injury, aside from Defendants' alleged scheme to furtively contaminate the property, the scheme in furtherance of which the mailings were undertaken. *See Bridge* at 658. Plaintiff, moreover, is the entity most directly harmed and best situated to sue. *See id.* That the NJDEP was the entity immediately duped by those letters does not disturb the clearly alleged causal link between the alleged scheme and the alleged harm suffered by Plaintiff. *See id.* at 649-50, 658.

### D. Plaintiff plausibly alleges that the NBR Defendants conducted the affairs of NBR

"There must be a nexus between the person and the conduct in the affairs of an enterprise. The operation or management test goes to that nexus. In other words, the person must knowingly engage in 'directing the enterprise's affairs' through a pattern of racketeering activity." *University of Md. v. Peat, Marwick, Main & Co.*, 996 F.2d 1534, 1539 (3d Cir. 1993) (citing *Reves v. Ernst & Young*, 507 U.S. 170 (1993)). The Third Circuit has found a sufficient pleading of 'conducting affairs' where "defendants are alleged to be members of the enterprise," because "'if defendants band together to commit [violations] they cannot accomplish alone...then they cumulatively are conducting the association-in-fact *enterprise's* affairs, and not [simply] their own affairs.' *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 378 (3d Cir. 2010) (internal citations omitted). The *Brokerage Antitrust* court also relied on allegations that the defendants engaged in particular conduct constituting participation. *Id.* at 378-79; *see also Freedom Med., Inc. v. Gillespie*, 634 F. Supp. 2d 490, 507-508 (E.D. Pa. 2007) (finding that allegations of one defendant's ownership and executive status in a corporation "central[]...to the alleged enterprise" and of another defendant's active involvement in operating and managing same was sufficient to survive motion to dismiss).

Here, Plaintiff alleges that the NBR Defendants "own and/or control" NBR, the alleged enterprise, (FAC ¶ 4), having "created, formed, and registered" NBR (*id.* at ¶ 31). It alleges, in particular, that defendant Murray is director and CEO of NBR. (*Id.* at ¶¶ 4, 32). Plaintiff alleges that the NBR Defendants enabled NBR's expansion onto the Property (after all, 9440 LLC leased it and Sanzari signed the lease), (*id.* at ¶ 6), and that each of the NBR Defendants acted through NBR in sending the correspondences comprising the mail fraud predicate acts, (*id.* at ¶ 35). Thus, Plaintiff makes several non-boilerplate allegations of operation of and/or participation in NBR by each of the NBR Defendants, adequately pleading that each conducted the enterprise's affairs.

### E. Count Two (RICO Conspiracy) survives

Defendants assert a tack-on argument, essentially that I should dismiss the Count Two RICO Conspiracy for the same reasons that the Count 1 substantive RICO claim should be dismissed. I have denied the motion to dismiss Count 1; I will therefore deny the motion to dismiss the Count 2 RICO conspiracy claim as well.

### F. Plaintiff's allegations concerning pre-suit notice are sufficient

The citizens' suit provision of the Clean Water Act provides that a citizen may not commence an action "prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order[.]" 33 USC § 1365(b)(1)(A) (pre-suit notification requirement). The NBR Defendants argue that the First Amended Complaint should be dismissed because its allegation concerning pre-suit notification is "clearly insufficient to satisfy either part of the statute's pre-suit notice requirement." (NBR Dfd's Br. at p. 15).

Plaintiff, however, alleges that it "notified the Commissioner of the Environmental Protection Agency (EPA) and the Director/Commissioner of the [NJDEP] in writing via certified mail of its claims against the Defendant's [sic] and concurrently notified the Defendant's [sic] in writing via certified mail for their violations of the Clean Water Act. These letters were mailed pursuant to the 60 day notice requirement of the Clean Water Act." (FAC ¶ 103).

First, that is clear enough to meet pleading standard. Plaintiff's allegation clearly implies, indeed as much as states, that the 60-day notice requirement was met.

Second, there is no requirement that a plaintiff to artfully allege every detail of compliance with the pre-suit notice requirement contained in 40 CFR 135.3(a). Commonly, the sufficiency of a plaintiff's pre-suit notice is assessed based on evidence and not a parsing of the pleadings. *See generally Public Interest Research Group v. Hercules, Inc.*, 830 F. Supp. 1525, 1529-1535 (D.N.J. 1993) (enforcing pre-suit notification requirement on motion for summary judgment, reviewing the actual notice letters rather than pleading allegations concerning same), *rev'd and remanded on other grounds*, 50 F.3d 1239, 1247-1249 (3d Cir. 1995); *Friends of the Earth, Inc. v. Gaston Copper* Recycling *Corp.*, 629 F.3d 387, 399-400 (4th Cir. 2011) (assessing the sufficiency of the pre-suit notice based on evidence adduced at trial and warning, even in that context, "against an overly technical application of regulatory requirements." (citing *Hercules*)). This ground for dismissal, too, is rejected.

8

### G. Plaintiff does not fail to allege a "current" violation

The CWA authorizes citizen suits against any person "who is alleged to be in violation..." of the statute. 33 U.S.C. § 1365(a)(1). The Supreme Court has stated that "[t]he most natural reading of 'to be in violation' is a requirement that citizen-plaintiffs allege a state of either continuous or intermittent violation—that is, a reasonable likelihood that a past polluter will continue to pollute in the future. *Gwaltney of Smithfield v. Chesapeake Bay Found.*, 484 U.S. 49, 57 (U.S. 1987). The Court held that there is "jurisdiction over citizen suits when the citizen-plaintiff makes a good-faith allegation of [a] continuous or intermittent violation." *Id.* at 64.

The NBR Defendants contend that the Clean Water Act does not authorize a citizen suit for "wholly past violations." This Complaint, they say, alleges "wholly past violations" and fails to allege any current, "continuous or intermittent violation." (NRD Dfd's Br. at 16-17).

All that is required is a good-faith allegation of a current violation. *See Sierra Club v. Union Oil Co. of California*, 853 F.2d 667, 669 (9th Cir. 1988); *PennEnvironment v. PPG Indus.*, 964 F. Supp. 2d 429, 469 (W.D. Pa. 2013). And a violation is considered current, or ongoing, when prior discharges have not been remediated, and the pollutant remains on the property or in the water. *See Raritan Baykeeper, Inc. v. NL Indus.*, 2013 U.S. Dist. LEXIS 2628 (D.N.J. Jan. 8, 2013) ("The contaminants from NL's discharges constitute a continuing violation because they remain in the river and the river sediments have not been remediated." (citing *Gwaltney*, 484 U.S. at 69 (Scalia, J., concurring) ("'[T]o be in violation,' unlike the phrase 'to be violating' or 'to have committed a violation,' suggests a state rather than an act— the opposite of a state of compliance. A good or lucky day is not a state of compliance. Nor is the dubious state in which a past effluent problem is not recurring at the moment but the cause of that problem has not been completely and clearly eradicated. When a company has violated an effluent standard or limitation, it remains, for purposes of § 505(a), 'in violation' of that standard or limitation so long as it has not put in place remedial measures that clearly eliminate the cause of the violation.")));  *see also PennEnvironment* at 470-71 (denying motion to dismiss CWA claims and noting that the arguments are more appropriate for a motion for summary judgment).

Here, Plaintiff's numerous allegations of illegal toxic dumping which has not been remediated (FAC at ¶¶ 11, 13, 48, 54) constitute good faith allegations that satisfy the "current violation" requirement.

### H. Plaintiff validly seeks both monetary penalties and injunctive relief, both of which are legally available.

NBR Defendants argue that the CWA permits a citizen to seek only injunctive relief. Any such claim, they say, "is a red herring... Defendants no

longer rent the Property, and therefore, it is unclear what type of injunctive relief could possibly be granted against the Defendants." And Count 6, they argue, impermissibly seeks on behalf of a citizen "monetary fines and sanctions assessed by this Court and Regulatory Agencies against Defendants."

Citizens may seek "monetary fines and sanctions" against violators of the Act. The relevant section of the CWA, which Defendants cite, states that in citizen suits "district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce such an effluent standard or limitation, or such an order, or to order the Administrator to perform such act or duty, as the case may be, and to apply any appropriate civil penalties under section 309(d) of this Act [33 USCS § 1319(d)]." 33 U.S.C. § 1365(a). The case law confirms this. *See Sierra Club v. Simkins Industries, Inc.*, 617 F.Supp. 1120, 1126-1127 (D. Md. 1985) ("courts, in fact, may assess civil penalties for violations of the Act alleged to have occurred prior to the filing of the case." (citing, *inter alia, Student Public Interest Research Group of New Jersey v. Monsanto*, 600 F. Supp. 1474, 1476-77 (D.N.J. 1985)), *affirmed* 847 F.2d 1109 (4th Cir. 1988), *reh den, en banc* 1988 US App LEXIS 12617 (4th Cir. 1988), *cert den* 491 U.S. 904 (1989)). Thus, Plaintiff is not legally barred from demanding that fines and sanctions be imposed.[2]

As for the NBR Defendants' assertion that Plaintiff does not make a legitimate claim for injunctive relief because Defendants no longer rent the Property, I see no basis for dismissal at the pleading stage. The allegations are broad enough to accommodate evidence that hazardous materials on the Property continue to leak effluent, or that Plaintiff continues to suffer flooding as a result of Defendants' acts.

As to these grounds, too, the motion to dismiss is denied.

---

[2] The NBR Defendants may be conflating this demand with one for private compensatory relief. (*See* Br. at 18). Plaintiff is manifestly seeking civil fines, not private recovery, in the Sixth Count of the First Amended Complaint. *Cf. Sierra Club v. Simkins Industries, Inc.*, 617 F.Supp. 1120, 1127 ("The court also notes that it finds the cases cited by defendant in support of its position inapposite because such cases involved the recovery of damages and not the recovery of civil penalties.")

**Conclusion**

For the reasons stated above, the NBR Defendants' motion to dismiss the first amended complaint is **DENIED**. Tilcon's motion to dismiss for lack of subject matter jurisdiction is **DENIED**. An appropriate order follows.

HON. KEVIN MCNULTY
United States District Judge

Date: May 2, 2014
Newark, New Jersey