UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMA REALTY LLC, | |
| *Plaintiff*, | |
| v. | Civil Action No. 13-457 (JMV) (MF) |
| 9440 FAIRVIEW AVENUE LLC, JOSEPH SANZARI, TIMOTHY MURRAY, JOSEPH SANZARI INC., NORTH BERGEN ASPHALT LLC, and TILCON NEW YORK, INC., | **OPINON** |
| *Defendants/Counterclaimants Third-Party Plaintiffs*, | |
| v. | |
| PERFECT BODY & FENDERS CO., INC. | |
| *Third-Party Defendant.* | |

**John Michael Vazquez, U.S.D.J.**

This case comes before the Court on Third-Party Defendant Perfect Body & Fender Co., Inc.'s ("PBF") motion for summary judgment. D.E. 178. PBF seeks summary judgment on the claims by Defendant/Third-Party Plaintiff 9440 Fairview LLC ("Fairview") against PBF for contribution, indemnification, and breach of lease. D.E. 129. The Court reviewed submissions made in support of the motions and considered the motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons that follow, PBF's motion is **GRANTED** in part and **DENIED** in part.[1]

---

[1] Plaintiff and all Defendants have also moved for summary judgment. Those motions are addressed in separate Opinions.

## I. Factual Background & Procedural History

The following facts are taken from PBF's Statement of Facts, D.E. 178 ("PBF SOF"), Defendants' Counterstatement of Material Facts ("Defendants' SOMF"), D.E. 188-5, and PBF's Response to Defendant's Statement of Facts ("PBF Response"), D.E. 209-2. Plaintiff AMA Realty LLC ("AMA") and Fairview[2] entered into a ten-year lease for a property located at 9501 Fairview Avenue in North Bergen, New Jersey. PBF SOF at ¶1. The lease began on July 1, 2007. *Id.* On June 29, 2007,[3] Fairview sub-leased a commercial structure on the property to PBF. *Id.* at ¶3. After the lease term ended, PBF stayed on as a month-to-month tenant until March 31, 2011. *Id.* at ¶4.

While PBF was a tenant, Fairview alleges that PBF installed pieces of equipment, including spray paint booths and exhaust fans, which were then removed when the lease ended. *Id.* at ¶¶6-7, 24, Defendants' SOMF at ¶9. Timothy Murray, a named Defendant who is affiliated with Fairview, "performed a walkthrough" of the building after PBF vacated the property, along with Richard Vihonski, a principal of PBF. PBF SOF at ¶27. PBFFs lawyer, Donna Harris, sent a letter to Fairview's lawyer on March 29, 2011, confirming the walkthrough and stating that the "condition of the premises was acceptable to the landlord." *Id.* at ¶29. Defendants state that Murray did visit the premises but he only "agreed that the equipment had

---

[2] AMA claims that Defendant Sanzari signed the lease in his personal capacity, rather than as an agent for Fairview, making him liable directly for breaches thereof. This issue has been addressed in a separate Opinion, where the Court found that the lease is in fact between AMA and Fairview. PBF raises this point in its motion, but given that the Court has decided against AMA on this issue, the Court will not address it further in this Opinion.

[3] AMA, the primary landlord, was aware that Fairview was going to enter into sub-lease with PBF. As a result, the sub-lease was signed a few days before the lease actually commenced.

2

been removed and that the building appeared to be broom clean." Defendants' SOMF at ¶10. AMA then inspected the property and informed Fairview that "there were numerous issues with the building that had to be addressed." *Id.* at ¶11. AMA later filed the current suit, and included allegations that the commercial structure had suffered damage. *Id.* at ¶13. AMA, in a letter to PBF, alleged the following damage by PBF in removing the fixtures:

> [R]ipped out the two spray paint booths, which caused structural damage to the roof, and electrical and plumbing damage to the spray paint booths. The rear doors were damaged. Vents have been ripped out. The exterior duct work was removed leaving holes in the roof resulting in water damage.

Ex. Q to the Certification of Timothy Corriston (hereinafter "Corriston Cert.).

The sub-lease between Fairview, the "Sublandlord," and PBF, the "Subtenant," states that the PBF is responsible for the following: "All maintenance, repairs and replacements as to the Premises and its equipment, to the extent Sublandlord is obligated to perform the same under the Prime Lease." Exhibit C to the Certification of Michael K. Tuzzio, D.E. 178-4 (hereinafter "Tuzzio Cert.") at §9(b). The "Prime Lease" was the lease between Fairview and AMA, the "Prime Landlord." PBF was to leave the premises "in good order and condition." *Id.* at §16. PBF was also to "remove all of Subtenant's property and all other personal property . . . and shall pay the cost of repairing all damage to the Premises occasioned by such removal." *Id.* PBF was further obligated to "indemnify Sublandlord and hold Sublandlord harmless from any losses, damages, liabilities and expenses which Sublandlord may incur, or for while Sublandlord may be liable to Prime Landlord, arising from the acts or omissions of Subtenant." *Id.* at §19. Fairview, in turn, was obligated to indemnify PBF for any claims arising from "the act or omission of Sublandlord." *Id.* at §20.

AMA accuses Defendants of various damage to the entire property, including the illegal dumping of hazardous material, changing the grade of the property, improperly installing storm

3

drains, and damage to the structure on the property. With the exception of alleged flooding caused by the re-grading of the property, the current motion concerns damage to the commercial structure while PBF was the tenant.

In its June 23, 2014 Answer to AMA's Amended Complaint, Fairview filed third-party claims against PBF. D.E. 64. PBF answered and filed a cross-claim against Defendant Tilcon New York, Inc. ("Tilcon") on September 5, 2014. D.E. 83. Fairview filed its second third-party complaint on June 11, 2015, and PBF answered on June 16, 2015. D.E. 129, D.E. 131. PBF filed the instant motion on December 22, 2016. D.E. 178. Defendants filed their opposition, D.E. 188, on February 3, 2017, and PBF replied on April 13, 2017. D.E. 209.

## II. Standard of Review

Summary judgment is proper where the moving party "shows that there is no genuine dispute as to any material fact," and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Abraham v. Raso*, 183 F.3d 279, 287 (3d Cir. 1999). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial."

*Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

### III. Analysis

As noted, Fairview asserts claims for indemnification, contribution, and breach of the sublease against PBF. At the outset, PBF seeks to be released for liability from any "environmental claims." The Court has not viewed any evidence indicating that PBF is liable for the improper dumping, groundwater contamination, other water contamination, or other environmental claims that AMA lodged against Defendants. As a result, there is not genuine issue of material fact, and PBF is entitled to summary judgment.

As to the claimed damage to the commercial structure, there are two issues: alleged flooding due the improper re-grading of the property and damage to the structure itself, including the roof. As to the flooding, there has been no evidence demonstrating PBF's responsibility for the re-grading or the installed storm drains. As a result, PBF is also entitled to summary judgment in this regard.

As the remaining damage to the structure, including the roof, PBF argues that it is entitled to summary judgment because there is no evidence that it did any damage to the structure and because Fairview effectively released PBF from any and all claims. For its part, Fairview essentially argues that it disagrees with AMA as to the alleged damage to the structure, but if such damage did occur, it was caused by PBF during the subtenancy.

### a. Damage to Property

PBF's primary argument for summary judgment is that because Fairview cannot show that PBF did any damage to the structure during its subtenancy, there can be no claim for contribution or indemnification. However, AMA's expert report of Thomas R. Parisi states that the roof of the structure was damaged, and that it was "structurally unsalvageable and in need of complete replacement." Ex. J to Tuzzio Cert. at 2-3. PBF argues that Parisi blames the damage on Fairview and other named Defendants, but his report states that "the causes for the damages are the result of the inappropriate actions of the tenant in not maintaining the property by not maintaining building components such as to the roof, building walls, gutters, leaders, etc." as well as the change in the grade of the property. *Id.* at 10. While the tenant was Fairview, Parisi's report in no way absolves PBF as the subtenant. As noted, it is undisputed that PBF was the subtenant and that PBF removed its fixtures before vacating the structure. Moreover, AMA

memorialized in a letter that it believed that the damage was due to PBF.[4]

PBF also cites the deposition of Michael Aita, president of AMA, as proof that AMA replaced the roof itself, independent of the issues purportedly caused by PBF. *See* Ex. H to Tuzzio Cert. at 129:19-20. Mr. Aita, however, testified that when PBF removed the spray paint booths, it caused a lack of support for vents in the roof. At this stage of the case, there are genuine issues of material fact as to the extent of the damage to the structure and the cause thereof. The factual issues go to the core of Fairview's third-party claims, and thus the Court cannot grant PBF summary judgment.

### b. Murray's Walk-Through as Waiver

PBF next argues that even if Fairview could show that PBF is responsible for the alleged damage, Fairview waived any claim of contribution or indemnification because Murray inspected the property after PBF had vacated. The Courts finds this argument to be unavailing. First, the Sublease contains a provision that prohibits waiver of any of the conditions of the agreement:

> No waiver by any party of any default by any other party in the performance of any provision, condition, or requirement herein shall be deemed to be a waiver of, or in any manner release the other party from, performance of any other provision, condition or requirement herein. . . .

Ex. C to Tuzzio Cert. at §28(C). The sublease also states: "This Sublease may not be modified, varied or amended except by an instrument in writing signed by the parties." *Id.* at §28(E).

---

[4] Fairview also submitted the report of their own expert, Joseph M. Sullivan, which states, "In essence, as Perfect Body had been in the Building since original construction . . . Perfect Body is responsible for any and all repairs to maintain the building, in accordance with Sublease Section 16." Ex. E to Corriston Cert. at pg. 27. However, this observation is based solely on Mr. Sullivan's reading of the sublease. Mr. Sullivan does include details on the condition of the roof in his report, but as he was unable to see its condition before it was replaced by AMA, he does not opine on any damage that may have been caused by PBF. *See* Ex. E to Corriston Cert. at pg. 57-61.

7

The "basic rule of contractual interpretation [is] that a court must discern and implement the common intention of the parties." *Pacifico v. Pacifico*, 190 N.J. 258, 77 (2007). However, "[w]here the terms [of a contract] are clear and unambiguous there is no room for interpretation of construction and the courts must enforce those terms as written." *Assisted Living Associates of Moorestown, L.L.P. v. Moorestown Tp.*, 31 F.Supp.2d 389, 398 (D.N.J. 1998) (internal citations omitted). PBF fails to address these two clauses in the sublease which appear to undercut its waiver argument. Given the clear language in the contract prohibiting the type of waiver PBF argues for, and the further proof that any such modification of a term had to have been made in writing and signed by both parties—not just PBF's lawyer—PBF's waiver argument fails to demonstrate that it is entitled to summary judgment.

Second, by PBF's own description, all Murray is alleged to have done is acknowledge that the premises were "broom clean"—not that the building was otherwise in the condition required by the sublease. Even if PBF contests this description, it nevertheless raises a genuine issue of material fact precluding summary judgment. PBF has pointed to no terms in the sublease, or cited any binding precedent, for the proposition that a walkthrough at the end of sublease period thereby absolves the subtenant for liability for all damage later discovered. PBF. Finally, PBF's lawyer's letter of March 29, 2011, stating that the premises were acceptable, while potentially probative of trial is not dispositive as a matter of law. To this end, PBF provides no substantive analysis of the legal effect of the letter.

For the foregoing reasons, the Court denies PBF's request for summary judgment as to damage to the commercial structure except as to any damage caused by flooding.

IV.  **Conclusion**

For the reasons stated above, PBF's motion for summary judgment is **GRANTED** in part

and **DENIED** in part. An appropriate Order accompanies this Opinion.

Dated: December 28, 2017

John Michael Vazquez, U.S.D.J.