# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMA REALTY LLC,<br><br>        Plaintiff/Counterclaim<br>        Defendant,<br><br>                v.<br><br>9440 FAIRVIEW AVENUE, LLC,<br>JOSEPH SANZARI, TIMOTHY<br>MURRAY, JOSEPH SANZARI INC.,<br>NORTH BERGEN ASPHALT LLC,<br>and TILCON NEW YORK, INC.<br><br>        Defendant/Counterclaimant/<br>        Third-Party Plaintiff<br><br>                v.<br><br>MILLENNIUM RESOURCES<br>RECOVERY, LTD, PERFECT BODY<br>& FENDERS CO., INC., and JOHN<br>DOES 1-5.<br><br>        Third-Party Defendants. | CIVIL ACTION NO.: 02:13-cv-00457<br>(JMV/MF) |

## DEFENDANT/THIRD PARTY PLAINTIFF 9440 FAIRVIEW AVENUE, LLC AND DEFENDANTS JOSEPH SANZARI, TIMOTHY MURRAY, JOSEPH SANZARI INC. AND NORTH BERGEN ASPHALT, LLC'S

## BRIEF IN SUPPORT OF ITS MOTION *IN LIMINE* TO PRECLUDE THE OPINIONS SUSAN MIANO, CPA, ABV, CFF CONTAINED IN THE FRIEDMAN LLP EXPERT REPORT DATED FEBRUARY 29, 2016 AND ADDENDUM TO THE REPORT DATED MARCH 30, 2018

*Connell Foley LLP*
*56 Livingston Avenue*
*Roseland, NJ 07068*
*973.535.0500*
*Attorneys for Defendant/*
*Counterclaimant/Third-Party Plaintiff*
*9440 Fairview Avenue LLC and*
*Defendants Timothy Murray, North*
*Bergen Asphalt LLC and Joseph M.*
*Sanzari Inc.*

*Krovatin Klingeman LLC*
*60 Park Place, Suite 1100*
*Newark, NJ 07102*
*973.424.9777*
*Attorneys for Defendant,*
*Joseph M. Sanzari, individually*

*Of Counsel and On the Brief:*
    *Timothy E. Corriston, Esq.*
    *Scott M. Press, Esq.*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................ 1

STATEMENT OF FACTS ............................................................................... 3

LEGAL ARGUMENT ..................................................................................... 6

POINT I

PLAINTIFF SHOULD BE PRECLUDED FROM
INTRODUCING THE FRIEDMAN ECONOMIC DAMAGES
REPORT BECAUSE IT FAILS TO APPLY NEW JERSEY
LAW IN ITS CALCULATION OF PREJUDGMENT
INTEREST ...................................................................................................... 6

   A.  The Loss of Use of Funds Analysis in the Friedman Report
      is Inconsistent with New Jersey Law ..................................................6

       1.  The Calculation of a Prejudgment Interest Award, if Warranted,
          Should Comply with New Jersey Court Rule 4:42-11 ..................8

       2.  The Friedman Report Contains Additional Errors of Law Making
          it Unreliable ................................................................................12

   B.  B. The Friedman Report Provides No Basis for this Court to
      Stray from the Prejudgment Interest Calculation Framework
      Set Forth in New Jersey Court Rule 4:42-11(a)(ii) ...............................13

POINT II

SUSAN MIANO SHOULD BE PRECLUDED FROM
TESTIFYING BECAUSE THE FRIEDMAN REPORT
MISAPPLIES NEW JERSEY LAW AND IS UNRELIABLE ..................... 15

   A.  Susan Miano should be Precluded from Testifying about the
      Conclusions Reached in the Friedman Report because her
      Testimony will not Assist the Trier of Fact ..........................................18

CONCLUSION ............................................................................................... 19

5096113-1

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bankers Trust Co.*,
  659 F.2d 103 (3d Cir. 1981)...............................................................................5

*Benevenga v. Digregorio*,
  325 N.J. Super. 27 (App. Div. 1999)..................................................................7

*Calhoun v. Yamaha Motor Corp.*,
  350 F.3d 316 (3d Cir. 2003)......................................................................13, 14

*Cooper Distributing Co., Inc. v. Amana Refrigeration, Inc.*,
  63 F.3d 262 (3d Cir. 1995).................................................................................5

*County of Essex v. First Union Nat'l Bank*,
  186 N.J. 46 (2006) .............................................................................................5

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993)..............................................................................13, 14, 16

*De Puy, Inc. v. Biomedical Eng'g Trust*,
  216 F. Supp. 2d 358 n.22 (D.N.J. 2001)............................................................7

*Devine v. Advanced Comp. Concepts, Inc.*,
  2009 U.S. Dist. LEXIS 1631, at *8, 2009 WL 78158 (D.N.J. Jan.
  9, 2009)...............................................................................................................7

*DialAmerica Marketing, Inc. v. KeySpan Energy Corp.*,
  374 N.J. Super. 502 (App. Div. 2005)................................................7, 8, 9, 12

*Schneider ex rel. Estate of Schneider v. Fried*,
  320 F.3d 396 (3d Cir. 2003).............................................................................14

*Gilbert v. Durand Glass Mfg. Co., Inc.*,
  258 N.J. Super. 320 (App. Div. 1992)..............................................................11

*Hang Hung Loong Tranding Co. v. INCO Ltd. Liab. Co.*,
  2017 U.S. Dist. LEXIS 172877, 2017 WL 4697069 (D.N.J. Oct.
  18, 2017)...........................................................................................................10

ii

*Highland Capital Mgmt., L.P. v. Schneider*,
   379 F. Supp. 2d 461 (S.D.N.Y. 2005) ...........................................................15

*Jamy Enters., LLC v. E&S Food Serv. Corp.*,
   2009 U.S. Dist. LEXIS 94602 (D.N.J. Oct. 9, 2009) .........................................6

*Johnson v. Johnson*,
   390 N.J. Super. 269 (2007) .........................................................................10

*Krys v. Aaron*,
   112 F. Supp. 3d 181 (D.N.J. 2015)...........................................................15, 16

*Kumho Tire Co., Ltd. v. Carmichael*,
   526 U.S. 137 (1999).....................................................................................13

*Litton Industries, Inc. v. IMO Industries, Inc.*,
   200 N.J. 372 (2009) .......................................................................................5

*Magistrini v. One Hour Martinizing Dry Cleaning*,
   180 F. Supp. 2d 584 (D.N.J. 2002)..........................................................13, 14

*Mid-Jersey Bank v. Fidelity Mortgage Investors*,
   518 F.2d 640 (3d Cir. 1975) ...........................................................................5

*Musto v. Vidas*,
   333 N.J. Super. 52 (App. Div. 2000)...............................................................5

*North Bergen Rex Transport, Inc. v. Trailer Leasing Co., A Division*
   *of Keller Sys., Inc.*,
   158 N.J. 561 (1999) .......................................................................................6

*Oddi v. Ford Motor Co.*,
   234 F.3d 136 (3d Cir. 2000)..........................................................................13

*Pappas v. De Puy Orthopaedics*,
   33 F. App'x 35 (3d Cir. 2002)...................................................................7, 12

*Ruff v. Weintraub*,
   205 N.J. 233, 245 (1987)................................................................................6

*Salas v. Wang*,
   846 F.2d 897 (3d. 1988).................................................................................6

*W.R. Huff Asset Mgmt. Co., LLC v. William Soroka 1989 Trust*,
    2009 U.S. Dist. LEXIS 68807, 2009 WL 2436692 (D.N.J. Aug. 6,
    2009) ....................................................................................................9, 10

*Yarchak v. Trek Bicycle Corp.*,
    208 F. Supp. 2d 470 (D.N.J. 2002)............................................14, 15

**Rules**

Federal Rule of Evidence 104(a)..........................................................14

Federal Rule of Evidence 403 ..............................................................12

Federal Rule of Evidence 702 .......................................................*passim*

New Jersey Court Rule 4:42-11 .................................................6, 8, 12

New Jersey Court Rule 4:42-11 ..............................................................8

New Jersey Court Rule 4:42-11(a) ...................................................9, 10

New Jersey Court Rule 4:42-11(a)(ii) ............................................*passim*

New Jersey Court Rule 4:42-11(a)(ii) ..................................................10

New Jersey Court Rule 4:42-11(a)(iii) ...............................................8, 9

New Jersey Court Rule 4:42-11(b)....................................................5, 7

## PRELIMINARY STATEMENT

Defendant/Third-Party Plaintiff 9440 Fairview Avenue, LLC ("9440"), and Defendants Joseph M. Sanzari, Timothy Murray, Joseph M. Sanzari Inc., and North Bergen Asphalt, LLC (hereinafter collectively referred to as "Defendants") submit this Brief in support of the Motion to Preclude the Introduction of Plaintiff AMA Realty, LLC's ("Plaintiff AMA" or "AMA") Economic Damages Expert Report and the Opinion Testimony of Susan Miano, CPA, ABV, CFF ("Miano") of Friedman LLP ("Friedman") pursuant to Federal Rule of Evidence 702.

AMA produced an economic damages expert report (hereafter "February 2016 Report") and an addendum to the economic damages report (hereafter "March 2018 Addendum") (collectively referred to as the "Friedman Report") authored by Barry S. Sziklay, CPA, ABV, CFF, PFS and Miano of Friedman[1].  In the Friedman Report (the February 2016 Report is attached to the Certification of Timothy E. Corriston (hereinafter "Corriston Cert.") as Ex. A and the March 2018 Addendum is attached to the Corriston Cert. as Ex. B), Miano calculates the economic damages allegedly sustained by AMA as a result of the contentions levied against the Defendants in AMA's Complaint.  The opinions in the Friedman Report contravene New Jersey law with respect to the report's calculation of AMA's damages from its alleged loss of use of funds.

---

[1] AMA's Exhibit List to the Final Pretrial Order only identifies Miano to serve as its expert witness as it relates to the Friedman Report.

Notwithstanding AMA's failure to establish that it is even entitled to prejudgment interest on any potential judgment, Miano's misapplication of New Jersey law calls into the question the reliability of the entire report, and has the potential to unduly prejudice the defendants, if and when a final damages calculation is required.  Therefore, AMA should be precluded from introducing the Friedman Report into evidence and from permitting Miano to offer testimony concerning AMA's alleged damages.

## **STATEMENT OF FACTS**

Plaintiff AMA is the owner of property located at 9501 Fairview Avenue in North Bergen, New Jersey (the "AMA Property"). (*See* Plaintiff's First Amended Complaint and Jury Demand (D.E. #31) attached to the Corriston Cert. as Ex. C, at ¶1).

On December 31, 2006, AMA entered into a 10 year lease with Defendant 9440 for the use of the AMA Property which commenced on July 1, 2007 and had a scheduled expiration date of June 30, 2017 (the "Lease"). (*See* Lease attached to the Corriston Cert. as Ex. D).   AMA alleges that 9440 breached the Lease and vacated the Property prior to the expiration date on or about December 15, 2011. (*See* Ex. C to Corriston Cert., at ¶12).   As a result of the breach of Lease, AMA has asserted an environmental claim related to millings placed on the AMA Property, a building damage claim, and a claim for future rental payments. (*See* Ex. C to Corriston Cert.)   AMA is seeking compensation for economic damages it alleges were caused by 9440, which include damages in the form of "loss of use of funds". (*See* Exs. A and B to Corriston Cert.).

In the March 2018 Addendum Miano opines that AMA sustained "compensatory economic damages as of February 15, 2018 . . . ranging between" $11,300,000 and $12,300,000.    (*See* Ex. B to Corriston Cert., at pp. 1-2).   The March 2018 Addendum utilized a damages calculation date of February 15, 2018,

which was an update to the January 15, 2016 damages calculation date in the February 2016 Report.  (*See* Ex. B to Corriston Cert., at p. 2).

The damages figure in the February 2016 Report was comprised of five (5) different categories of damages, including the following: (i) cost to cure and related losses; (ii) building and property-related repairs and expenses; (iii) professional fees; (iv) defaulted rental income from 9440; and (v) foregone rental income during the remediation of the Property.  (*See* Ex. A to Corriston Cert., at p. 5).  Miano explains that "for purposes of future value calculations" and "loss of use of funds" the analysis "utilized the Corporate A-rated Bond yield as of the Damages Calculation Date of 4.3% as published by Moody's Investor Service as a proxy for Plaintiff's lost economic income, if reinvested, and taking into account only risk of default." (*See* Ex. A to Corriston Cert., at pp. 4-5).

The damages figure in the March 2018 Addendum is comprised of the following categories of damages: (i) the February 2016 Report's compensatory damages total; (ii) additional building and property-related repairs and expenses; and (iii) additional professional fees.  (*See* Corriston Cert. at Ex. B, pg. 3).  The March 2018 Addendum "utilized a Moody's Corporate A-rated bond rate to calculate Plaintiff's loss of use of funds" as of the Damages Calculation Date, which was 4.11%.  (*Id.,* at pp. 2-3).  Further, Miano calculated the "foregone interest income utilizing an annual interest rate of 4.11%, compounded monthly

4

(on a 30/360 convention). . . ." (*Id.*, at p.4).  With respect to the damage figures in the March 2018 Addendum, Miano included a range of $808,147 to $886,442 in loss of use of funds to the category (i) damages; an additional $17,366 in loss of use of funds to the category (ii) damages; and an additional $38,291 in loss of use of funds to the category (iii) damages.  (*Id.,* at pp. 3-5).  Therefore, the Friedman Report's conclusion regarding the compensatory damages sustained by AMA include between $863,804 and $942,099 in damages for AMA's "loss of use of funds".

## LEGAL ARGUMENT

### POINT I

**PLAINTIFF SHOULD BE PRECLUDED FROM INTRODUCING THE FRIEDMAN ECONOMIC DAMAGES REPORT BECAUSE IT FAILS TO APPLY NEW JERSEY LAW IN ITS CALCULATION OF PREJUDGMENT INTEREST**

**A.     The Loss of Use of Funds Analysis in the Friedman Report is Inconsistent with New Jersey Law**

The Friedman Report includes a separate calculation for "loss of use of funds" as to each category of damages assessed in the Report.  Conspicuously absent, and not addressed in the Friedman Report, is an explanation as to how New Jersey law addresses the concept of "loss of use of funds", when calculating damages in a breach of contract action.  In New Jersey, when appropriate, damages related to a claim for a loss of use of funds are compensable in the form of prejudgment interest.  *See Cooper Distributing Co., Inc. v. Amana Refrigeration, Inc.*, 63 F.3d 262, 284 (3d Cir. 1995); *In re Bankers Trust Co.*, 659 F.2d 103, 108 (3d Cir. 1981).  State law governs the availability of prejudgment interest on state law claims such as AMA's breach of contract claim.  *Mid-Jersey Bank v. Fidelity Mortgage Investors*, 518 F.2d 640, 645 (3d Cir. 1975).

Although prejudgment interest in a tort action is expressly governed by *N.J. Ct. R.* 4:42-11(b), "the award of prejudgment interest on contract and equitable claims is based on equitable principles." *County of Essex v. First Union Nat'l*

6

*Bank*, 186 N.J. 46, 61 (2006).  "Thus the award of prejudgment interest in a contract case is within the sound discretion of the trial court," as is the "rate at which prejudgment interest is calculated…."  *Litton Industries, Inc. v. IMO Industries, Inc.*, 200 N.J. 372, 390 (2009) (citing *Musto v. Vidas*, 333 N.J. Super. 52, 74-75 (App. Div. 2000)).

Initially, and addressed in more detail *infra¸* the equities do not support AMA's entitlement to an award of damages for the loss of use of funds in this breach of contract action, and therefore, the Court should use its discretion and deny AMA's request for prejudgment interest.  *See infra* at Section I. B.  However, to the extent the Court determines that an award of prejudgment interest is appropriate in this matter, AMA should be precluded from introducing the Friedman Report into evidence because its calculation of prejudgment interest applies an interest rate of 4.11%, compounded monthly on a 30/360 convention, which greatly exceeds the amount of prejudgment interest provided for in the New Jersey Court Rules.  *See generally N.J. Ct. R.* 4:42-11.  Accordingly, this misapplication of New Jersey law calls into the question the reliability of the entire report, and has the potential to unduly prejudice the Defendants, if and when a final damages calculation is required.  Therefore, AMA should be precluded from introducing the Friedman Report into evidence.

1.    **The Calculation of a Prejudgment Interest Award, if Warranted[2], Should Comply with *New Jersey Court Rule* 4:42-11**

The New Jersey Appellate Division has held that in contract cases, *N.J. Ct. R.* 4:42-11(a)(ii)--requiring application of the New Jersey Cash Management Fund Rate for pre and post-judgment interest in tort actions--provides an appropriate "starting point," absent unusual circumstances, for determining the rate of prejudgment interest. *DialAmerica Marketing, Inc. v. KeySpan Energy Corp.*, 374 N.J. Super. 502, 511 (App. Div. 2005); *Benevenga v. Digregorio*, 325 N.J. Super. 27, 35 (App. Div. 1999) ("[L]acking unusual circumstances, we conclude that the rate of return earned by the State Treasurer contemplated by R. 4:42-11(a)(ii) is the standard to which trial judges should adhere" in setting a contractual prejudgment

---

[2]An award of prejudgment interest is not appropriate in this matter due to AMA's failure to mitigate its damages. *See Jamy Enters., LLC v. E&S Food Serv. Corp.*, 2009 U.S. Dist. LEXIS 94602, at *11-12 (D.N.J. Oct. 9, 2009) (District Court of New Jersey denied plaintiff's motion for prejudgment interest despite a jury awarding damages to plaintiff due to defendant's breach of lease because the court determined it would be inequitable to hold defendant liable for prejudgment interest when it was not in possession of the property prior to the judgment). Similar to the *Jamy* court's rationale, it would be inequitable to award AMA prejudgment interest in this matter considering the lack of diligence in AMA's restoration efforts despite its possession of the Property and a proposed restoration plan submitted by the defendants. *See also Salas v. Wang*, 846 F.2d 897, 910 (3d. 1988) (quoting *Ruff v. Weintraub*, 205 N.J. 233, 245 (1987) (explaining that the New Jersey Supreme Court has indicated that a court may suspend prejudgment interest in "exceptional cases" where it is demonstrated that the policy, spirit and intent of the rule are patently inapposite to the circumstances at hand)); *North Bergen Rex Transport, Inc. v. Trailer Leasing Co., A Division of Keller Sys., Inc.*, 158 N.J. 561, 575 (1999) (applying the exceptional circumstances doctrine to breach of contract claims).

interest award.); *see also De Puy, Inc. v. Biomedical Eng'g Trust*, 216 F. Supp. 2d 358, 381 n.22 (D.N.J. 2001) ("New Jersey Court Rule[] 4:42-11(a)(ii) generally provides an appropriate benchmark" for calculating prejudgment interest.), *aff'd sub nom. Pappas v. De Puy Orthopaedics*, 33 F. App'x 35 (3d Cir. 2002); *Devine v. Advanced Comp. Concepts, Inc.*, 2009 U.S. Dist. LEXIS 1631, at *8, 2009 WL 78158 (D.N.J. Jan. 9, 2009) ("Since there are no unusual circumstances present in the instance [breach of contract] case, the Court will award prejudgment interest at the rate set forth in *N.J. Court Rule* 4:42-11([a]).").

As it relates to prejudgment interest in the tort context, *N.J. Ct. R.* 4:42-11(b) states that "[p]rejudgment interest shall be calculated in the same amount and manner provided for by paragraph (a) of this rule", which is the subsection of the rule that addresses the calculation of post-judgment interest.  A comparison of *N.J. Ct. R.* 4:42-11(a)(ii) with *N.J. Ct. R.* 4:42-11(a)(iii) reveals the importance of the presumption that lacking unusual circumstances, the rate set forth in *N.J. Ct. R.* 4:42-11**(a)(ii)** is to be used as the benchmark when the court uses its discretion in awarding and setting the amount of prejudgment interest in a breach of contract claim.  *See DialAmerica Marketing, Inc.*, *supra*, 374 N.J. Super. at 507-512.

Paragraph (a)(ii)[3] of *N.J. Ct. R.* 4:42-11 establishes the New Jersey Cash Management Fund rate as the measure for prejudgment interest "[f]or judgments

---

[3] *N.J. Ct. R.* 4:42-11(a)(ii) provides:

not exceeding the monetary limit of the Special Civil Part," and paragraph (a)(iii)[4]

adds two percent per annum to the rate specified for prejudgment interest on

"judgments exceeding the monetary limit of the Special Civil Part." *N.J. Ct. R.*

4:42-11(a)(iii).  Critically, the Appellate Division in *DialAmerica Marketing* held

that absent "unusual circumstances" subsection (a)(ii) should be used as the

appropriate starting point in determining the rate of prejudgment interest when the

Court is called upon to use its discretion in making the determination in suits for

contractual damages, and therefore it is not limited by the monetary requirements

---

> For judgments not exceeding the monetary limit of the
> Special Civil Part at the time of entry, regardless of the
> court in which the action was filed: commencing January
> 2, 1986 and for each calendar year thereafter, the annual
> rate of interest shall equal the average rate of return, to
> the nearest whole or one-half percent, for the
> corresponding preceding fiscal year terminating on June
> 30, of the State of New Jersey Cash Management Fund
> (State accounts) as reported by the Division of
> Investment in the Department of the Treasury, but the
> rate shall be not less than 0.25%.

In the present matter, since the alleged breach occurred on December 15, 2011, the
interest rate calculation will require calculations based upon the applicable annual
rate of interest for 2011-2017.  As set forth in the comments to *R.* 4:42-11, the
annual rate of interest commencing January 1, 2011 and for the remainder of that
calendar year is 0.5%; 2012 is 0.5%; 2013 is 0.25%; 2014 is 0.25%; 2015 is
0.25%; 2016 is 0.25%; 2017 is 0.5% and 2018 is 0.5%.

[4] *N.J. Ct. R.* 4:42-11(a)(iii) states: "For judgments exceeding the monetary limit of
the Special Civil Part at the time of entry: in the manner provided for in
subparagraph (a)(ii) of this Rule until September 1, 1996; thereafter, at the rate
provided in subparagraph (a)(ii) plus 2% per annum."

10

of the rule pertaining to tort actions.  374 N.J. Super. at 511.  Further, *N.J. Ct. R.* 4:42-11(a) provides that the interest on judgments shall bear simple interest.

The District Court of New Jersey adhered to the framework espoused by New Jersey's appellate court for calculating prejudgment interest in a breach of contract dispute in *W.R. Huff Asset Mgmt. Co., LLC v. William Soroka 1989 Trust*, 2009 U.S. Dist. LEXIS 68807, 2009 WL 2436692 (D.N.J. Aug. 6, 2009).  The *Huff* matter involved a contract dispute in which the District Court entered a judgment entitling defendants to approximately $6.5 million after which the defendants filed a motion to amend the judgment to include prejudgment interest on the award.  *Id.* at *2.  As part of the request, the defendants sought prejudgment interest to be calculated based upon the Prime Lending Rate ("prime rate") and to be compounded annually.  *Id.* at *4-5.  With respect to the calculation of interest, the plaintiff argued if interest were to be awarded, the Court would have to use a substantially lower interest figure than the prime rate.  *Id.* at *5.

However, as to the prejudgment interest rate calculation, finding no remarkable circumstances, the *Huff* Court concluded that in line with the appropriate starting point for making the prejudgment interest rate calculation dictated by New Jersey law, it would award prejudgment interest at the rate set forth in *N.J. Ct. R.* 4:42-11**(a)(ii)**.  *Id.* at *20-21 (emphasis added).  The Court continued that "[w]hile the 'propriety of compounded prejudgment interest is left

11

to the informed discretion of the district courts . . . New Jersey courts have found that compound interest unduly hastens the accumulation of debt and regard it as unfairly harsh and oppressive." *Id.* at *28-29 (internal quotations omitted) (noting that the most equitable interest rate in this matter would be simple interest). *See also N.J. Ct. R.* 4:42-11(a)(noting that "[e]xcept as otherwise ordered by the court or provided by law, judgments, awards and orders for the payment of money, taxed costs and counsel fees shall bear **simple interest**") (emphasis added); *Johnson v. Johnson*, 390 N.J. Super. 269, 274 (2007) ("[C]ompound interest is clearly the exception rather than the rule."). *See also Hang Hung Loong Tranding Co. v. INCO Ltd. Liab. Co.*, 2017 U.S. Dist. LEXIS 172877, 2017 WL 4697069 (D.N.J. Oct. 18, 2017) (relying on the *Huff* decision in support of application of *N.J. Ct. R.* 4:42-11(a)(ii) rate bearing simple interest in a breach of contract action).

## 2.    The Friedman Report Contains Additional Errors of Law Making it Unreliable

In addition to the incorrect application of New Jersey law pertaining to the calculation of prejudgment interest, the Friedman Report contains additional errors of law that make it unreliable.  An award of prejudgment interest for future loss is not allowed under New Jersey law. *See Gilbert v. Durand Glass Mfg. Co., Inc.*, 258 N.J. Super. 320 (App. Div. 1992) (holding that trial court abused its discretion where it awarded prejudgment interest on the damages for lost earnings due to

breach of an implied contract in a wrongful termination suit, since the earnings were prospective).

The Friedman Report expressly provides that it contains calculations for *estimated* damages due to foregone rental income during a remediation period that has two potential end dates (October 2018 and May 2022), both of which are subsequent to the date of the report.  (*See* Ex. B to Corriston Cert., at pp. 1-2) Therefore, the calculations in the Friedman Report contradict the policy in New Jersey of refusing to award prejudgment interest on future losses.

Clearly the Friedman Report misapplies New Jersey law, is unreliable and should be precluded at the time of trial.

**B.   B.   The Friedman Report Provides No Basis for this Court to Stray from the Prejudgment Interest Calculation Framework Set Forth in *New Jersey Court Rule* 4:42-11(a)(ii)**

In the event the Court determines that in its discretion AMA is entitled to an award of prejudgment interest, AMA should be precluded from introducing the Friedman Report into evidence because its failure to properly apply or even consider New Jersey law with respect to its prejudgment interest calculations calls into question its reliability, and further, any probative value it might have is outweighed by its potential to unduly prejudice the defendants.  *See F.R.E.* 403 ("The court may exclude relevant evidence if its probative value is substantially

13

outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury. . . .").

The Friedman Report fails to provide any basis that would support straying from the prejudgment interest calculation framework set forth in *N.J. Ct. R.* 4:42-11. Despite AMA's efforts at protracting this litigation and turning what otherwise should have been a simple breach of contract dispute between two parties into a lawsuit involving numerous claims against various entities, no "unusual circumstances" are evident that would support applying a prejudgment interest calculation contrary to the rate set forth in *N.J. Ct. R.* 4:42-11(a)(ii). Critically, in addition to failing to apply the interest rate that the Court would typically look to in matters such as the present suit, neither the Friedman Report nor AMA provides any basis or justification for straying from the precedent set forth in New Jersey law. *See DialAmerica Marketing, Inc.*, 374 N.J. Super. at 511; *De Puy, Inc.*, 216 F. Supp. 2d at 381 n.22.

AMA has failed to present any facts that would support an award of prejudgment interest at a rate far in excess of what would otherwise be utilized for such a calculation, which in this matter would be a combination of 0.25% and 0.5% depending on the year and bearing simple interest, as opposed to the 4.11% compounded monthly on a 30/360 convention. As such, AMA should not get the benefit of introducing the Friedman Report into evidence. While the defendants

14

dispute that any prejudgment interest should be awarded in this matter, in the event the Court determines such an award is appropriate, there is simply no justification for straying from the benchmark rates set in the New Jersey Court Rules. Moreover, since it is beyond evident that the Friedman Report lacks any indicia of reliability based upon its failure to justify the interest rate calculations contained in the report consistent with New Jersey law, AMA should be precluded from using or introducing the Friedman Report into evidence.

## POINT II

### SUSAN MIANO SHOULD BE PRECLUDED FROM TESTIFYING BECAUSE THE FRIEDMAN REPORT MISAPPLIES NEW JERSEY LAW AND IS UNRELIABLE

Plaintiff bears the burden of establishing "by a preponderance of proof" that its putative expert's opinions satisfy the requirements of *Fed. R. Evid.* 702. *Oddi v. Ford Motor Co.*, 234 F.3d 136, 144 (3d Cir. 2000) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 593 n.10 (1993)); *see also Magistrini v. One Hour Martinizing Dry Cleaning*, 180 F. Supp. 2d 584, 603 n.20 (D.N.J. 2002) ("[I]t is Plaintiff's burden, by a preponderance of the evidence, to show that his opinion is reliable and, in turn, that the basic underpinnings of his opinion are reliable."). *Fed. R. Evid.* 702 codifies the principles espoused by the Supreme Court in *Daubert*, providing that an expert must satisfy three factors: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of

15

reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Fed. R. Evid*. 702.

Consistent with that Rule, *Daubert* established a "trilogy of restrictions" on the admissibility of expert testimony relating to scientific knowledge. *See Calhoun v. Yamaha Motor Corp.*, 350 F.3d 316, 321 (3d Cir. 2003). *Daubert* also applies to expert testimony relating to "technical or other specialized knowledge." *See Oddi*, 234 F.3d at 146 (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999)). This "trilogy" consists of "qualification, reliability and fit." *Id.* It is the role of the district court to act "as a gatekeeper, preventing opinion testimony that does not meet the requirements of qualification, reliability and fit from reaching the jury." *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) (citing *Daubert*, 509 U.S. at 592).

With respect to the reliability, the focus is on the "principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. In making the reliability determination, the Court is guided by the following factors:

> (1) whether a method consists of a testable hypothesis;
> (2) whether the method has been subject to peer review;
> (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted;
> (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the

16

methodology; and (8) the non-judicial uses to which the
method has been put.

*Calhoun*, 350 F.3d at 321.  The Court must determine at the outset, pursuant to

*Fed. R. Evid.* 104(a), whether the expert is proposing to testify as to some

specialized knowledge that will assist the trier of fact in understanding or

determining an issue.  *Id.* at 592.

As for the third prong, *Fed. R. Evid.* 702 requires that the "proffered expert

testimony must 'fit' within the facts of the case." *Yarchak v. Trek Bicycle Corp.*,

208 F. Supp. 2d 470, 496 (D.N.J. 2002).  The fit requirement mandates that the

testimony "in fact assist the jury, by providing it with relevant information,

necessary for a reasoned decision of the case." *Id.* (citing *Magistrini v. One Hour

Martinizing Dry Cleaning*, 180 F. Supp. 2d 584, 595 (D.N.J. 2002)). Thus, even if

an expert is qualified and relies on sound methodology, he must still "apply this

expertise to the matter at hand." *Calhoun*, 350 F.3d at 324.

"[A]n expert cannot be presented to the jury solely for the purpose of

constructing a factual narrative based on record evidence," because solely narrating

the facts is not traceable to a reliable methodology and fails to fulfill *Daubert's*

basic requirements. *Krys v. Aaron*, 112 F. Supp. 3d 181, 206 (D.N.J. 2015)

(quoting *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469

(S.D.N.Y. 2005)).

A.   **Susan Miano should be Precluded from Testifying about the Conclusions Reached in the Friedman Report because her Testimony will not Assist the Trier of Fact**

The failure of the Friedman Report to follow New Jersey law with respect to its prejudgment interest calculations requires the preclusion of any testimony from the report's author and plaintiff's proposed expert witness, Susan Miano.

AMA cannot meet its burden of establishing that Ms. Miano's opinions will satisfy the requirements of *Fed. R. Evid.* 702, and based upon the misapplication of New Jersey law in the Friedman Report, her testimony will not assist the trier of fact. AMA cannot establish that the principles and methodology of the calculations contained in the Friedman Report are reliable, as the calculations are premised upon a misapplication of New Jersey law as it relates to the concepts of prejudgment interest and future loss. Therefore, since the methodologies pertaining to the damages calculations contained in the report are inconsistent with New Jersey law, the Friedman Report will not assist the fact finder because it merely recites AMA's factual perspective of its damages.  *Yarchak*, 208 F. Supp. 2d at 496.

Eliminating the interest calculations and projections of future loss from the Friedman Report reveals that the report itself provides no specialized expertise such that its conclusions will assist a fact finder.  Miano should therefore be precluded from testifying in this matter as her testimony would merely be a factual

18

narrative of AMA's allegations regarding its damages by using a simple arithmetic, which does not fulfill the requirements of *Fed. R. Evid.* 702 or *Daubert*.  *See Krys*, 112 F. Supp. 3d at 206.

Accordingly, Ms. Miano should be precluded from opining on the calculation of economic damages in this matter.

## CONCLUSION

For the foregoing reasons, AMA should be precluded from introducing the Friedman Report into evidence because its failure to comply with New Jersey law regarding the calculation of prejudgment interest makes the report unreliable. Furthermore, AMA's expert and author of the Friedman Report, Susan Miano, should be precluded from testifying about the conclusions in the report because her testimony regarding the calculations in the report will not assist the trier of fact.

| | |
|---|---|
| CONNELL FOLEY LLP | KROVATIN KLINGEMAN LLC |
| Attorneys for Defendant/ | Attorneys for Defendant, |
| Counterclaimant/Third-Party Plaintiff, | Joseph M. Sanzari, individually |
| 9440 Fairview Avenue, LLC, and | |
| Defendants, Timothy Murray, | |
| individually, Joseph M. Sanzari Inc., | |
| and North Bergen Asphalt, LLC | |

By:/s/ *Timothy E. Corriston, Esq.*       By:/s/ *Henry E. Klingeman, Esq.*
      Timothy E. Corriston, Esq.              Henry E. Klingeman, Esq.
                                              Helen A. Nau, Esq.

Dated: July 15, 2019