THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| AMA REALTY LLC,<br><br>Plaintiff/Counterclaim Defendant,<br><br>vs.<br><br>9440 FAIRVIEW AVENUE, LLC, JOSEPH SANZARI, TIMOTHY MURRAY, JOSEPH SANZARI, INC., NORTH BERGEN ASPHALT, LLC, and TILCON NEW YORK, INC.,<br><br>Defendant/Counter-claimant/<br>Third-Party Plaintiff,<br><br>vs.<br><br>MILLENNIUM RESOURCES RECOVERY, LTD, PERFECT BODY & FENDER CO., INC., and JOHN DOES 1-5,<br><br>Third-Party Defendants. | CIVIL ACTION<br><br>DOCKET NO. 02:13-cv-00457 |

**PERFECT BODY & FENDER CO., INC.'S
BRIEF IN SUPPORT OF MOTION IN LIMINE**

Michael K. Tuzzio, Esq.
**RONAN TUZZIO & GIANNONE**
One Hovchild Plaza - Ste. 231
4000 Route 66
Tinton Falls, New Jersey 07753
(732) 922-3300

*Attorneys for Third-Party Defendant
Perfect Body & Fender Co., Inc.*

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................................. I

TABLE OF AUTHORITIES ......................................................................................................ii

PRELIMINARY STATEMENT ................................................................................................1

FACTUAL BACKGROUND......................................................................................................3

STATEMENT OF FACTS ..........................................................................................................3

LEGAL ARGUMENT .................................................................................................................3

    I.    THE TESTIMONY OF JOSEPH M. SULLIVAN REGARDING DAMAGE TO THE ROOF AND BUILDING BY PERFECT BODY MUST BE BARRED AT TRIAL AS INADMISSIBLE EXPERT OPINION........................................................3

    A.    THE TESTIMONY OF JOSEPH M. SULLIVAN ATTRIBUTING DAMAGE TO THE ROOF BY PERFECT BODY MUST BE BARRED AT TRIAL AS A MATTER OF LAW.................................................................................................6

    B.    THE TESTIMONY OF MR. SULLIVAN ATTRIBUTING ANY DAMAGE TO THE BUILDING BY PERFECT BODY MUST BE BARRED AT TRIAL AS A MATTER OF LAW.................................................................................................8

CONCLUSION ..........................................................................................................................12

# **TABLE OF AUTHORITIES**

**Cases**

*Daubert v. Merrell Dow Pharmaceuticals, Ind.,* 509 *U.S.* 579 (1993)..............2, 3, 4, 5, 6, 7,8,11

*In re Paoli R.R. Yard PCB Litig.,* 35 *F. 3d* 717, 732 (3d Cir. 2994)..........................................4, 5

*Roberson v City of Philadelphia,* No. Civ. A. 99-3574, 2001 WL 210294, *4 (E.D. Pa. March 1, 2001)...................................................................................................................................4, 7

*Kumho Tire Co., Ltd v. Carmichael,* 526 U.S. 137 (137)............................................................... 5

*Voilas v. General Moto Corp.*, 73 *F. Supp.* 2d 452, (D.N.J. 1999)..................................................6

*Padillas v. Stork-Gamco, Inco.*, 186 *F. 3d* 412.    (3d Cir. 1999)....................................................6

*Buckalew v. Grossbard,* 87 *N.J.* 512, 524 (1981)...........................................................................4

*Rosenberg v. Tavorath*, 352 *N.J. Super.* 385, 401 (app. Div. 2002)...................................................4

*Jiminez v. GNOC Corp.*, 286 N.J. Super. 533, 540 (App. Div. 1996)..........................................4,5

*Stanley Co. Of America v. Hercules Powder Co.*, 16 N.J. 295, 305 (1954)...................................4

*Rubanik v. Witco Chemical Corp.*, 242 N.J. Super. 36, 45 (App. Div. 1990).............................4,5

*Nesmith v. Walsh Trucking Co.*, 123 *N.J.* 547 (1991)....................................................................5

*Vuocolo v. Diamond Shamrock Chem. Co.*, 240 *N.J. Super* 289 (App. Div.) *cert. denied* 122 *N.J.* 33 (1990).....................................................................................................................................5

**Rules**

*Fed. R. Evidence* 702 ........................................................................................2, 4, 5, 6, 7, 8, 11

Fed. R. Evidence 703................................................................................................2, 4, 8, 11

**PRELIMINARY STATEMENT**

Third-party defendant Perfect Body & Fenders Co., Inc. (hereinafter referred to as "Perfect Body") seeks an Order Limiting the Testimony of Joseph M. Sullivan P.E., C.B.I.E., expert of Defendant/Counterclaimant/ Third-Party Plaintiff, 9440 Fairview Avenue LLC (hereinafter referred to as "9440").

By way of background, Plaintiff's affirmative claims against 9440 and the other Sanzari defendants (hereinafter referred to collectively as "the Sanzari defendants") are numerous. However, of those multiple allegations asserted by AMA, most of the claims are <u>not</u> the subject of the 9440's third-party claims for contribution against Perfect Body.

The third-party contribution claims against Perfect Body sound in damage to the commercial structure while Perfect Body was a sub-tenant, including environmental claims as well as structure claims. The Third Party Complaint is very specific in its assertion against Perfect Body in alleging that, when Perfect Body vacated the premises, it left holes in the roof where exhaust fans had previously been utilized as part of Perfect Body's paint spray booth operations. The areas where the exhaust fans were located in the ceiling/roof were completely sealed by Bristol.

Perfect Body filed a Motion for Summary Judgment which was granted in part and denied in part. The Court granted Summary Judgment on all environmental claims alleged against Perfect Body. Accordingly, the only claims against Perfect Body that remain are for alleged damages to the structure.

The expert of 9440, Joseph M. Sullivan, P.E., C.B.I.E., does not have evidence to establish the condition of the roof or building when Perfect Body first occupied the premise (which was prior

to 9440 leasing the property), when 9440 leased the property and entered into the Sublease with Perfect Body, during the term of the Sublease, or when Perfect Body vacated the premises. Mr. Sullivan did not present any evidence in his report or at deposition to support the allegations regarding damage to the roof or the building by Perfect Body. In fact, Mr. Sullivan testified that he did not know the baseline condition of the roof or building in 2007 when the sublease commenced. Mr. Sullivan testified that he did not have any knowledge of the roof other than the day he walked the property which was well after the sublease ended in March of 2011 and well after Perfect Body vacated the premises. Accordingly, Mr. Sullivan did not present any evidence that Perfect Body did anything to damage any aspect of the property during the period of its sub-tenancy. In fact, Mr. Sullivan asserts there was no damage to the property, but without any support given his opinion that there was no damage to the property, alleged that if there was damage, it was caused by Perfect Body. This speculate testimony cannot be permitted.

    Not only does Mr. Sullivan not have evidential support, but the facts refute his opinion. Michael Aita, principal of plaintiff AMA, completely resurfaced the roof and testified that the removal of the roof hatches did <u>not</u> result in any additional cost or damage.

    Mr. Sullivan (or anyone else on behalf of 9440) has no evidence whatsoever that Perfect Body did any damage to any aspect of the property during the period of its sub-tenancy. Under Federal Rules of Evidence 702 and 703 and the factors set forth by the Supreme Court for determining the admissibility of expert testimony in *Daubert*, such testimony would be inadmissible expert opinion due to the lack of factual support.

2

## FACTUAL BACKGROUND

Plaintiff AMA, owns the property located at 9501 Fairview Avenue in North Bergen, New Jersey ("AMA's property") with an original lease between AMA and Perfect Body, where Perfect Body was a direct tenant of AMA. The original lease was from 1998 until 2007. (See Exhibit D). When the original lease expired in 2007, 9440 entered into a lease agreement for AMA's property, whereby 9440 took possession as a tenant on July 1, 2007. (See Exhibit E). At that time, 9440 entered a sublease with Perfect Body. The sublease commenced on July 1, 2007 and terminated December 31, 2007. (See Exhibit F). At the conclusion of the Sublease, Perfect Body remained on the premises as a month to month tenant until March 31, 2011.

## STATEMENT OF FACTS

Third Party Defendant Perfect Body & Fender Co., Inc. shall rely upon the facts set forth in the Certification of Counsel.

## LEGAL ARGUMENT

### POINT I

**The Testimony of Joseph M. Sullivan Regarding Damage to the Roof And the Building By Perfect Body Must Be Barred At Trial As Inadmissible Expert Opinion**

The Supreme Court evaluated the issue of admissibility of expert testimony in *Daubert v. Merrell Dow Pharmaceuticals, Ind.*, 509 *U.S.* 579 (1993). In *Daubert*, the Supreme Court held that: (1) "general acceptance" is not necessarily precondition to admissibility of scientific evidence under Federal Rules of Evidence, and (2) Rules assign to trial judge the task of ensuring that expert's testimony both rests on <u>reliable foundation</u> and relevant to the task at hand." *Id.* [Emphasis added].

3

Federal Rules of Evidence 702 governs the admissibility of expert testimony in Federal Court, which states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert by knowledge, skill experience, training, or education may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably the facts of the case.

*Fed. R. Evid.* 702. [Emphasis added]

An expert's testimony must fit into the facts of the case. The Third Circuit Court of Appeals explained in *In re Paoli R.R. Yard PCB Litig.*, 35 *F. 3d* 717, 732 (3d Cir. 1994) that "Rule 703 focuses on the data underlying the expert's opinion." Under Rule 703, "the expert must rely upon facts and data which are a type reasonably relied upon by experts in the particular field. *Id*. at 22. The expert must rely on facts and data to form such conclusions. When the expert offers his opinion based on experience, "he must apply his experience reliably to the facts; his opinion must be well-reasoned, grounded in his experience, and not speculative." *Roberson v City of Philadelphia,* No. Civ. A. 99-3574, 2001 WL 210294, *4 (E.D. Pa. March 1, 2001). The proponent of the testimony bears the burden of establishing its admissibility by a preponderance of the evidence. *Daubert v. Merrell Dow Parms., Inc.*, 509 *U.S.* 579, 592 n. 10, 113 *S.Ct.* 2786, 125 *L.Ed.*2d 69 (1993).

When an expert's opinion is merely a bare conclusion unsupported by factual evidence, *i.e.*, a "net opinion," it is inadmissible. *Buckalew v. Grossbard*, 87 *N.J.* 512, 524 (1981); *see also*, *Rosenberg v. Tavorath*, 352 *N.J. Super.* 385, 401 (App. Div. 2002). An opinion lacking in foundation is worthless. *Jiminez v. GNOC Corp.*, 286 *N.J. Super.* 533, 540 (App. Div. 1996) *citing Stanley Co. of America v. Hercules Powder Co.*, 16 *N.J.* 295, 305 (1954). Indeed, when an expert's opinion is

brought before a jury pursuant to *N.J.R.E* 702, "there must be a factual and scientific basis for an expert's opinion." *Jiminez*, 286 *N.J. Super.* at 540 *citing Rubanik v. Witco Chemical Corp.*, 242 *N.J. Super.* 36, 45 (App. Div. 1990), *modified on other grounds* 125 *N.J.* 421 (1991).

In *Jiminez*, plaintiff had alleged that she was caused to be injured by a escalator rail that had come to a stop. *Id.* at 537. In particular, plaintiff claimed her torso was caused to twist, causing her lower back pain. *Id.* In support of plaintiff's claim, the expert testimony of Theodore Moss was submitted to the jury. *Id.* at 538. Moss testified that the lack of preventative maintenance was the cause of plaintiff's injury. *Id.* at 541. In ruling that Mr. Moss' expert opinion was a net opinion, the Appellate Division stated:

> Although Moss did purport to identify relevant safety standards, he never explained how [the defendant] deviated from those standards or provided facts to support his opinion. Thus, Moss' opinion was no better than that of the expert in *Nesmith v. Walsh Trucking Co.*, 123 *N.J.* 547 (1991) who offered no basis from the factual record for his opinions. Finally, since Moss could not specify any conduct of [the defendant] which caused the incident, his testimony was worth no more than that of the *Vuocolo v. Diamond Shamrock Chem. Co.*, 240 *N.J. Super* 289 (App. Div.) *cert. denied* 122 *N.J.* 33 (1990)expert in that it was comprised of guesswork and conjecture.
> *Id.* at 542.

The ultimate touchstone of the admissibility of an expert's opinion is helpfulness to the trier of fact. With regard to liability, helpfulness turns on whether the expert's opinion is sufficiently reliable so as to aid the jury in reaching accurate results. *In re Paoli R.R. Yard PCB Ltd.,* 35 F.3d 717 (3rd Cir. 1994), *cert. denied*, 115 S.Ct. 1253 (1995).

The Supreme Court in *Kumho Tire Co., Ltd. v. Carmichael*, 526 *U.S.* 137 (137) clarified that the *Daubert* factors in assessing reliability, stating that they do not just apply to scientist but rather to engineers and other experts. *Id*. at 137. In *Kumho* The Supreme Court explained that the

5

"*Daubert* "gatekeepoing" obligation applies not only to "scientific" testimony, but to all expert testimony.

When making a reliability determination required by *Fed. R. Evid*. 702 and *Daubert*, the Third Circuit has reaffirmed the importance of conducting in limine hearings under Rule 104. *Voilas v. General Moto Corp*., 73 F. Supp. 2d 452, (D.N.J. 1999) citing, *Padillas v. Stork-Gamco, Inc.,* 186 *F. 3d* 412, 417 (3d Cir. 1999). Hence, in *Voilas,* the expert had been extensively deposed. *Id.*

In *Padillas*, supra, the Third Circuit ruled that, if the court below was concerned with the factual dimensions of the expert evidence, "it should have had an in limine hearing to assess the admissibility of the report," giving the parties an opportunity to respond to the concerns. *Padillas v. Stork-Gamco, Inc.,* 186 *F. 3d* 412  (3d Cir. 1999). In this case, Mr. Sullivan does not have the underlying facts to support his opinions.

    A.    <u>The Testimony Of Joseph M. Sullivan Attributing Damage To The Roof By Perfect Body  Must Be Barred At Trial As A Matter of Law</u>

The testimony of Joseph M. Sullivan, P.E., C. B.I.E., the expert of 9440, must be barred from attributing the damage of the roof to Perfect Body as inadmissible expert opinion.  Mr. Sullivan has not presented any facts or data to support a claim that Perfect Body damaged the roof in any way during the period of its sub-tenancy and/or by the removal of paint spray booths by Perfect Body's retained outside contractor, Bristol.

At deposition, Mr. Sullivan testified  that he did not examine the roof of the structure while occupied by 9440 during the sub-tenancy.  Mr. Sullivan further testified that he did not "go into the period when the building was occupied by others or 9440 because that would mean that [he] would have [had] to research whether AMA knew conditions existed and that he is solely discussing the period after 9440 left the property."  (See Exhibit H).

6

Mr. Sullivan testified that he does not have any knowledge of the structure at the commencement of the sublease in 2007 or at any point in time while the structure was occupied by 9440. Mr. Sullivan testified that the only first hand knowledge he has of the premises is when he walked the property and examined the roof from a lift which was well after Perfect Body vacated the premises. (See Exhibit I).

The sublease terminated on or about March 31, 2011 and Mr. Sullivan walked the property in 2016. Therefore, any testimony at trial by Mr. Sullivan regarding damage to the roof by Perfect Body would be mere speculation which constitutes inadmissible expert opinion under Federal Rules of Evidence 702 and the factors in *Daubert*.

Under the relevant case law, an expert must rely on facts and data to form such conclusions. Furthermore, "he must apply his experience reliably to the facts; his opinion must be well-reasoned, grounded in his experience, and not speculative." *Roberson v City of Philadelphia,* No. Civ. A. 99-3574, 2001 WL 210294, *4 (E.D. Pa. March 1, 2001) (See Exhibit M).

Mr. Sullivan testified that he had no knowledge of the condition when the Sublease was signed or at any point in time that the premises was occupied by Perfect Body during the sublease. Mr. Sullivan had no facts or evidence to establish the condition of the roof and walls prior to or during the sublease. Mr. Sullivan cited to no testimony to support that Perfect Body caused damage or when the damage was caused. He presented no proofs that Perfect Body caused any damage to the property or the roof during the sub-tenancy. In fact, Mr. Sullivan denied there were damages to the building. In attempting to cover his opinion in the event the jury finds damages, Mr. Sullivan says the damages were caused by Perfect Body. Mr. Sullivan's opinion is based entirely on speculation and meets the very definition of inadmissable expert testimony.

7

Not only does Mr. Sullivan not have support that Perfect Body allegedly caused damage to the roof but Mr. Aita's testimony contradicts his conclusions. Mr. Aita testified that, well after Perfect Body's sub-tenancy ended, he replaced the roof because it needed replacing, not because of any alleged problems caused to the roof by Perfect Body. *(*See Exhibit K, page 22 -23 and page 135). The hatches, which were actually part of the roof and built into the roof, were removed as part of the roof demolition process. *(*See Exhibit L, p. 129, lines 5-23).

Therefore, any testimony by Mr. Sullivan that Perfect Body allegedly damaged the roof during the sub-tenancy is contradicted by Mr. Aita. Given that there are no facts or evidence presented by Mr. Sullivan that Perfect Body caused any damage to the roof of the structure during the sub-tenancy, any testimony regarding same must be barred as a matter of law.

   B. <u>The Testimony Of Mr. Sullivan Attributing Any Damage To The Building By Perfect Body Must Be Barred At Trial As A Matter Of Law</u>

Pursuant to Federal Rule of Evidence 702 and 703 and *Daubert*, Mr. Sullivan must be barred from attributing any damage to the building by Perfect Body as he has not presented any facts or evidence to support such opinions. In Mr. Sullivan's report, he states that "in essence, as Perfect Body had been in the building since the original construction (before the date identified in the sublease), Perfect Body is responsible for any and all repairs to maintain the building...." (See Exhibit G, page 27). This maintenance responsibility is further noted to be for maintenance of the building to keep it "in good order and condition, ordinary wear and tear excepted." *Id.* Therefore, Mr. Sullivan states that notwithstanding 9440's denials and position as to AMA's claims for damages and repairs to the building, "Perfect Body is responsible for any and all cost associated with the building, due to *long-term occupancy* of *the building, including prior to the sublease,* except for any

8

damage, if any, which Perfect Body could show in the shared garage bay, was caused by 9440 or damage caused by or the responsibility of Perfect Body." *Id.* (emphasis added).

 Mr. Sullivan states that:

> as to the condition of the roof and walls due to Perfect Body occupancy, 9440 had no responsibility to correct or repair the Building as these conditions were existing at the time of the 9440 Lease commencement and was part of the then "good" condition of the Premises. It was improper for AMA to insist upon 9440 to remove the Perfect Body roof and/or wall penetration construction. As none of the conditions of the Building, associated with the previous AMA and Perfect Body Lease, were addressed in the 9440 Lease, and those conditions existed at the commencement of the 9440 Lease, 9440 had no obligation to remove/and or repair the Building roof or Building wall, due to the Perfect Body installations, which existed at the commencement of the 9440 Lease.

 (See Exhibit G, pg 61).

 Any argument that damages were caused prior to sublease must be disregarded as 9440 accepted the condition of the land when it signed the Lease. Mr. Sullivan has not presented any factual support or evidence that Perfect Body's occupancy caused any damage to the building. Further, 9440 is not entitled to make any claims against Perfect Body for damages to the building for the period of time prior to the sub-tenancy. 9440 is not entitled to assert any claim for damages to the building for any period of time other than the sub-tenancy (2007-2011).

 Under the original lease with AMA, Perfect Body did not have any maintenance responsibility for the building. (See Exhibit D, Article 7, Section 7.3). In fact, Article 7, Section 7.3 (d) of the lease between AMA and Perfect Body states, "Landlord hereby agrees to repair, maintain and replace all structural portions of the Premises, including, without limitation, the exterior walls, foundation and roof in good repair and working order." *Id.* Hence, what may have happened to the building during the twenty (20) year period from 1998 to 2007 is irrelevant to Mr.

Sullivan's analysis. AMA has not brought any claims against Perfect Body for damages to the building during this period of time. 9440 could not bring any claims against Perfect Body for damages to the Building during this period of time as it has no legal right to bring said claims. There is no evidence whatsoever on record that Perfect Body damaged the building during the original lease period or any point in time.

    Mr. Sullivan has not presented any evidence that Perfect Body damaged the building during the sub-tenancy. In 2007, when 9440 took over the premises, it accepted the premises and its condition. In his report, Mr. Sullivan states that section 19 of the lease "provides that 9440 is accepting the premises in an "as is" condition." Section 19.1 set forth an agreement between AMA that the current condition of the building "were in good and satisfactory condition..." Even Mr. Sullivan agreed that the building "was in good condition" in July of 2007. (See Exhibit H, pg 20). Therefore, any testimony attributing damage to the building during original lease period must be barred as contradicted by the record. Moreover, Mr. Sullivan has not presented any evidence that Perfect Body damaged the building or the roof or building at any point in time.

    Mr. Sullivan's report limits any responsibility to a change in condition from the time of the new lease and sublease. Mr. Sullivan states that "as the parties to the Lease agreed that the Building in July of 2007 was in good condition, the basis for future evaluation and analysis of the Building condition must be compared to the condition at the commencement of the Lease." (Exhibit G, pg 20). Mr. Sullivan states that "Parisi failed to establish this base condition of the building," and Mr. Sullivan testified that he has no knowledge of the baseline condition of property. Perfect body had no responsibility for maintenance of the building during the direct tenancy, and there is no evidence that Perfect Body damaged the property during the sub-tenancy.

Mr. Sullivan cannot take an unauthorized legal position (9440 had no legal rights during the original lease) to the effect that the aged condition of the building should be the fault of Perfect Body. Not only is this an unauthorized legal position but the record is completely void of any facts or evidence to support such claims.

Not only does AMA not claim damages against Perfect Body but Michael Aita (principal of AMA), Tim Murray (principal of 9440), Dennis O'Connor from Bristol, do not claim or present any evidence that Perfect Body damaged the building. Since there was no evidence as to the condition of the building when 9440 entered the Lease with AMA and no evidence that Perfect Body damaged the building at any time, Mr. Sullivan must be barred from testifying that Perfect Body damaged the building.

Therefore, under Federal Rules of Evidence 702, 703, and *Daubert*, Mr. Sullivan must be barred from testifying that Perfect Body damaged the building.

## CONCLUSION

Third-Party Defendant, Perfect Body, respectfully submits that its Motion in Limine be granted.

**RONAN TUZZIO & GIANNONE**
*Attorney for Third-Party Defendant*
*Perfect Body & Fender Co., Inc.*

By:   s/Michael K. Tuzio
Michael K. Tuzio, Esq.

Dated: July 15, 2019