**Not for Publication**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

AMA REALTY LLC,

      *Plaintiff*,

   v.

9440 FAIRVIEW AVENUE LLC, et al.,

      *Defendants*.

Civil Action No. 13-457 (JMV) (MF)

**OPINION**

**John Michael Vazquez, U.S.D.J.**

      Currently pending before the Court are the following post-trial motions filed by Plaintiff AMA Realty LLC ("AMA" or "Plaintiff"): (1) motion for prejudgment interest, D.E. 357; and (2) motion to amend judgment pursuant to Federal Rule of Civil Procedure 59(e) to include taxable costs, and an award of counsel fees and litigation expenses, D.E. 364.  Defendants 9440 Fairview Avenue LLC ("9440" or "Defendant"), Timothy Murray, Joseph M. Sanzari Inc. and North Bergen Asphalt LLC oppose both motions, D.E. 385, and Plaintiff filed a reply, D.E. 402.[1]  The Court reviewed the parties' submissions[2] and considered the motions without oral argument pursuant to

---

[1] Defendants initially filed their own motion for attorneys' fees pursuant to 28 U.S.C. § 1927. Defendants argued that they were entitled to attorneys' fees from Plaintiff's attorneys as a sanction for Plaintiff's attorneys' conduct during this litigation.  D.E. 365.  Defendants have since withdrawn their motion, in part, because they maintain that the issues raised therein can be addressed through the instant motions.  D.E. 382.

[2] Plaintiff's certification in support of its motion for prejudgment interest, D.E. 357-1, shall be referred to as "Plf. Interest Cert."; Plaintiff's certification in support of its motion to amend judgment, D.E. 364-1, shall be referred to as "Plf. Fee App. Cert."; Defendants' brief in opposition to both motions, D.E. 385, is referred to as "Defs' Opp."; and Plaintiff's reply brief, D.E. 402, is referred to as "Plf. Reply".

Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b).  For the following reasons, Plaintiff's motions are **GRANTED in part** and **DENIED in part**.

## I.        FACTUAL AND PROCEDURAL BACKGROUND

As the parties are familiar with this matter, the Court does not provide a detailed factual recitation.  Instead, the Court recounts key relevant facts here and discusses certain additional facts in the Analysis section below.

Plaintiff initiated this matter in 2013, asserting civil RICO, breach of contract, Clean Water Act and common law claims against Defendants.  D.E. 1.  Plaintiff later filed an Amended Complaint.  D.E. 31.  The overarching dispute involved the alleged dumping of hazardous materials on AMA's property, in violation of a lease between the parties (the "Lease") and certain government regulations.  *Id.*  On December 28, 2017, this Court determined, among other things, that Defendants were entitled to summary judgment for Plaintiff's RICO and certain common law claims.  D.E. 215.  The matter ultimately proceeded to trial on the remaining counts.

The nine-day jury trial began on October 21, 2019.  D.E. 318.  During the trial, Defendants did not contest that 9440 breached the Lease, thus the only issue to be decided by the jury was the amount of AMA's damages.[3]  *See* Trial Tr. vol. I, 155:25-156:15 (Oct. 21, 2019).  On November 4, 2019, the jury reached a verdict and awarded Plaintiff approximately $1.2 million in damages.  The amount of damages reflected AMA's lost rent and related damages, in addition to remediation costs that AMA was entitled to under the Lease.  Plf. Fee App. Cert., Ex. A.  The jury, however, also determined that AMA failed to mitigate its damages, and reduced Plaintiff's overall damages by approximately half, to the approximately $1.2 million amount.  *Id.*  On December 30,

---

[3] Plaintiff's other remaining claims after the motions for summary judgment, the Clean Water Act and unjust enrichment claims, were dismissed through Defendants' motion for judgment as a matter of law during the trial.  D.E. 329.

2019, after briefing on the issue, the Court entered a judgment based on the jury verdict, in favor of AMA and against 9440 in the amount of $1,208,414.44.  D.E. 354.  AMA subsequently filed its motions for attorneys' fees and expenses, taxable costs, and prejudgment interest.  D.E. 357, 364.

## II.      ANALYSIS

### 1.  Attorneys' Fees & Costs

#### A.  The Lease

When considering attorneys' fees and costs, New Jersey[4] usually follows the "'American Rule,' which prohibits recovery of counsel fees by the prevailing party against the losing party." *In re Estate of Vayda*, 875 A.2d 925, 928 (N.J. 2005) (quoting *In re Niles*, 823 A.2d 1, 7 (N.J. 2003)).  Although New Jersey law generally disfavors fee-shifting, "a prevailing party can recover [attorneys'] fees if they are expressly provided for by statute, court rule, or contract."  *Packard-Bamberger & Co., Inc. v. Collier*, 771 A.2d 1194, 1202 (N.J. 2001).  In this instance, AMA seeks counsel fees pursuant to Section 18.1 of the Lease between AMA and 9440.  Section 18.1 provides as follows:

> If an Event of Default shall have occurred by Tenant or Landlord has defaulted on its obligations on this Lease and the same is not cured within any applicable cure period, the non-defaulting party may . . . make any expenditure or incur any obligation for the payment of money in connection with any obligation owed to the non-defaulting party, including, but not limited to, reasonable attorneys' fees and disbursements in instituting, prosecuting or defending any action or proceeding, and in either case thereof, with interest thereon at the Applicable Rate, shall be paid by the defaulting party to the non-defaulting party . . . .

Plf. Fee App. Cert., Ex. C at § 18.1.

---

[4] The Court had supplemental jurisdiction over the breach of lease claim, which was governed by New Jersey law.

Defendants argue that this provision of the Lease is ambiguous.  Defendants continue that the clause is actually intended to cover third-party claims that AMA is forced to prosecute or defend against due to 9440's default, not direct actions between AMA and 9440.  Defs' Opp. at 4-5.  Plaintiff counters that Section 18.1 is not limited to third-party actions, and encompasses the claims asserted here.  Plf. Reply at 2.

When a contract provides for fee shifting, the applicable contractual provision "should be strictly construed in light of [New Jersey's] general policy disfavoring the award of attorneys' fees." *Litton Indus., Inc. v. IMO Indus., Inc.*, 982 A.2d 420, 428 (N.J. 2009).  But a court must "enforce the terms as written and not fashion a better contract for the parties than they themselves made." *Nye v. Ingersoll Rand Co.*, 783 F. Supp. 2d 751, 764 (D.N.J. 2001) (quoting *Loigman v. Twp. Comm. of the Twp. of Middletown*, 687 A.2d 1091, 1097 (N.J. App. Div. 1997)).  In determining the parties' intent, the first step is to determine "whether the relevant terms and provisions of the contract are clear or ambiguous." *Heffron v. Adamar of N.J., Inc.*, 270 F. Supp. 2d 562, 570 (D.N.J. 2003) (quoting *Pacitti v. Macy's,* 193 F.3d 766, 773 (3d Cir. 1999)).  The determination of whether a contract or a specific contractual term is clear or ambiguous is a question of law for the court to decide.  *Nestor v. O'Donnell*, 693 A.2d 1214, 1220 (N.J. App. Div. 1997).  "An ambiguity in a contract exists if the terms of the contract are susceptible to at least two reasonably alternative interpretations." *Id.*  To determine the meaning through the objective intent of the parties, "the terms of the contract must be given their 'plain and ordinary meaning.'" *Id.*  If a contract is not ambiguous, the court must enforce the terms as written.  *County of Morris v. Fauver*, 707 A.2d 958, 969 (N.J. 1998).

Section 18.1 is not ambiguous.  Although it does not expressly contemplate a direct action between AMA and 9440, it also does not limit such an action.  Rather, the contract clearly provides

that the non-defaulting party, here AMA, can make "*any* expenditure or incur *any* obligation for the payment of money," including the payment of attorneys' fees in a matter connected to an obligation owed to AMA. Critically, there is no limit on who must be involved in the proceedings. Accordingly, Section 18.1 permits AMA to recover attorneys' fees that it incurred in connection with 9440's breach of the Lease.

Defendants construe Section 18.1 as an indemnity clause. *See* Defs' Opp. at 5-7 (providing a standard for interpreting indemnity clauses and relying upon cases that interpret indemnity clauses). Other sections of the Lease, however, expressly contemplate AMA's obligation to indemnify 9440. *See* Plf. Fee App. Cert., Ex. C at § 8.2 (discussing 9440's duty to indemnify AMA for losses or costs associated with the clean-up or remediation of hazardous material). This demonstrates that the parties knew how to include an indemnity clause, and actually did include such a clause in a different portion of the Lease. The parties did not do so in Section 18.1 though. Accordingly, the separate indemnity provision buttresses the Court's conclusion that Section 18.1 is not limited to attorneys' fees incurred in third-party actions.

In sum, AMA is entitled to reasonable attorneys' fees and expenses that are related to 9440's breach by virtue of Section 18.1 of the Lease.[5]

---

[5] Defendants also contend that Section 18.1 is not applicable because AMA never provided notice to 9440 of its default. Because AMA failed to comply with a required condition under the Lease, Defendants maintain that this fee application should be denied in its entirety. Defs' Opp. at 4 n. 2. Section 16.1 states that an event of default may result in default "if not cured within 5 days written notice for a monetary event of default and 15 days for a non-monetary event of default under this Lease." Plf. Fee App. Cert., Ex. C at ¶ 16.1. The tenant's failure to make a payment due under the Lease constitutes an event of default. *Id.* In addition, Section 18.1 permits a party to the lease to recover attorneys' fees, among other relief, "[i]f an Event of Default shall have occurred by Tenant or Landlord has defaulted on its obligations on this Lease and the same is not cured within any applicable cure period." *Id.* ¶ 18.1.

9440 had sufficient notice and an opportunity to cure here. First, AMA sent a letter regarding the breach on December 15, 2011. Although the letter is addressed to Joseph Sanzari, Inc., the subject

### B.  Lodestar Analysis

To determine the reasonableness of an attorneys' fee award pursuant to New Jersey law, a court first looks to see whether the party entitled to attorneys' fees prevailed in the litigation and whether the litigation "was causally related to securing the relief obtained; a fee is justified if [the party's] efforts are a necessary and important factor in obtaining relief."  *Litton Indus., Inc.*, 982 A.2d at 428 (internal quotations omitted).  After the jury verdict in this matter, the parties litigated who constituted the "prevailing party," as to taxable costs, and the Court determined that AMA is the prevailing party as to 9440.  D.E. 353.  Judgment was entered to that effect.  D.E. 354.

Because the Court already determined that AMA is the prevailing party, the Court turns to the reasonableness of AMA's requested fees and costs.  To do so, courts determine the lodestar, which is the "number of hours reasonably expended by the successful party's counsel in the litigation, multiplied by a reasonable hourly rate."  *Litton Indus., Inc.*, 982 A.2d at 428. Specifically, in conducting a lodestar analysis a court considers the degree "of [the prevailing party's] success in determining the reasonableness of the time expended," as well the "the reasonableness of the hourly rate of 'the prevailing attorney in comparison to rates for similar services by lawyers of reasonably comparable skill, experience, and reputation in the community.'"  *Id.* at 429 (quoting *Furst v. Einstein Moomjy, Inc.*, 860 A.2d 435, 447 (N.J. 2004)

---

line is "Notice of Default, Lease between AMA Realty, Landlord and Joseph M. Sanzari, Individually and 9440 Fairview Avenue LLC and Sanzari North, LLC."  Plf. Oct. 26, 2020 Ltr., Ex. B.  Joseph M. Sanzari was a member of 9440.  The letter states that it serves as a formal notice of default due to the failure to pay rent.  *Id.*  Despite the fact that the letter was not addressed to 9440, the Court concludes that it provided sufficient, actual notice to AMA under the facts here. In addition, 9440's knowledge of its default is also evidenced by its December 15, 2011 letter to AMA Realty.  Plf. Oct. 26, 2020 Ltr., Ex. A.  In the letter, 9440 acknowledges receipt of a "myriad" of demand letters and formally surrendered possession of the property.  *Id.*  By abandoning the property, 9440 voluntarily decided not to avail itself of any opportunity to cure.  Consequently, the Court disagrees with 9440's argument about a lack of notice.

(internal quotations and citation omitted)).

The decision of whether a fee is reasonable must also be analyzed through the lens of New Jersey Rule of Professional Conduct ("RPC") 1.5, which "commands that 'a lawyer's fee shall be reasonable in all cases.'" *Hunt Constr. Grp., Inc. v. Hun School of Princeton*, No. 08-3550, 2012 WL 113606, at *4 (D.N.J. Jan. 13, 2012) (quoting RPC 1.5(a)). RPC 1.5 sets forth the following list of non-exhaustive factors courts should consider when assessing the reasonableness of a fee award:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
> (8) whether the fee is fixed or contingent.

RPC 1.5(a)(1)-(8). The party seeking the fee award has the ultimate burden to establish that its requested fees are reasonable. *See Green v. Morgan Props.*, 73 A.3d 478, 492 (N.J. 2013) ("[W]e have made plain that the party seeking to be awarded attorneys' fees ordinarily bears the burden of proving that they are reasonable, and that contractual fee shifting provisions are strictly construed."); *see also Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990) ("The party seeking attorney's fees has the burden to prove that its request for attorney's fees is reasonable.").

Turning first to the hourly rate, Defendants contend that Plaintiff's award should be reduced because the hourly rates sought are contrary to the express language of the Lease. Defs'

Opp. at 26. In making this argument, Defendants rely on Rider I of the Lease, which is a personal guaranty between non-party North Bergen Recycling Center, Inc. ("North Bergen") and AMA. Plf. Fee App. Cert., Ex. C at 37-38. The rider states that if "Landlord [AMA] is required to enforce Guarantors' [North Bergen's] obligations hereunder," North Bergen shall pay all costs and expenses, "including without limitation, reasonable attorney's fees at $250.00 per hour." *Id.* at 37. North Bergen is not, and never has been, a party to this litigation. Moreover, AMA never sought to enforce its rights as to North Bergen's failure to perform its obligations under the guaranty. Thus, Rider I is not relevant to the present fee dispute and does not limit Plaintiff's attorneys' hourly rates. Critically, Section 18.1 of the Lease, which is applicable, contains no such rate limitation. Instead, the section permits "reasonable" fees. Defendants do not otherwise dispute the hourly rates sought by Plaintiff's attorneys, and the Court finds that they are reasonable.

As for the reasonableness of the hours expended, Defendants argue, for numerous reasons, that AMA's application is deficient and inadequate. Defs' Opp. at 11-19. The Court agrees that AMA's application is noticeably deficient, especially since AMA knew it was going to seek fees in this matter. Not only is Plaintiff contractually entitled to attorneys' fees for the breach of lease claim but this case was driven by Plaintiff's RICO claims, which affords a prevailing party with attorneys' fees. 18 U.S.C. § 1964. Despite Plaintiff's likely intent to file a fee application if judgment was granted in its favor due to the claims it asserted, Plaintiff's attorneys' time records are lacking information that the Court expected. But while a prevailing party has the burden to show reasonableness, exact precision is not the standard. *See Rode*, 892 F.2d at 1190 (explaining that fee petition "should include some fairly definite information as to the hours devoted to various general activities" but need not set forth "the exact number of minutes spent nor the precise activity to which each hour was devoted"). This case is well over five years old and the trial lasted more

than a week.  Plaintiff only seeks approximately $500,000 in fees, which Plaintiff indicates reflects only a proportional amount of the overall fees in this matter.  Despite the lack of detailed records, the Court concludes that the hours expended in this matter for the breach of lease claim are reasonable, and Plaintiff's time records are sufficient.

But the Court has discretion when assessing the overall reasonableness of a fee application and can reduce the amount of fees requested if the prevailing party's actual success was limited. *Moody v. Township of Marlboro*, 855 F. Supp. 685, 691 (D.N.J. 1994) (explaining that "the court is inclined to make a substantial downward adjustment of the amount of fees sought by plaintiff in order to achieve a reasonable figure taking into account the results obtained by plaintiff in relation to the scope of the litigation as a whole," where the plaintiff was prevailing party as to her CEPA claim but the CEPA claim was minor with respect to the federal claims that were ultimately dismissed); *see also Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("If, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.  This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. . . . . There is no precise rule or formula for making these determinations.  The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success."); *Lohman v. Duryea Borough*, 574 F.3d 163, 166-67 (3d Cir. 2009) (finding "that a downward departure of the lodestar is warranted" in part because the results obtained through trial were "not as great as [Plaintiff] claims").

Here, Defendants contend that AMA should not receive any attorneys' fees because as a whole, AMA was unsuccessful in this litigation.  Namely, Defendants argue that despite the fact that AMA asserted numerous claims against numerous parties, AMA successfully obtained a

verdict in its favor for a single claim against a single party.  Using this as a metric of success, Defendants maintain that AMA was actually unsuccessful.  Defs' Opp. at 29-32.  Plaintiff was entitled to assert the claims it did in this matter and the Court will not now penalize Plaintiff because its litigation strategy was not as successful as it hoped.  This argument, therefore, is rejected as to Plaintiff's success vis-à-vis all claims originally asserted.  As noted, Plaintiff also indicates that it already discounted its fee request to reflect the work performed on the breach of lease claim.  Of course, this is the only claim on which Plaintiff was entitled to recover fees, but it also necessarily means that the requested fees are not attributed to the overall litigation.

Defendants also argue that, if the Court does award AMA fees, the amount should at least be reduced to reflect AMA's limited success.  *Id.* at 32-36.  In this instance, 9440 did not dispute that it breached the Lease; the only issue that was litigated at trial was AMA's damages from the breach.

The Court reviews the parties' positions during trial.[6]  During the trial, Plaintiff initially argued that it was entitled to approximately $8 to $11 million in damages.  Trial Tr. vol. I, 12:18-25.  As noted, 9440 agreed that it breached the lease, and, in fact, this concession was included on the verdict form.  D.E. 336 at 1 ("9440 acknowledges that it breached the lease.").  Thus, there were three questions for the jury to decide.  The first was whether AMA proved that it suffered damages from the breach of the Lease in the form of "lost rent, property tax payments, utility payments, insurance payments and/or related damages[.]" ("Lost Rent and Related Damages").  *Id.*  The jury answered this question in the affirmative and decided that the amount was $2,022,715.308.  *Id.*  The second was whether AMA proved that it suffered damages related to

---

[6] The Court refers to the statements and arguments of counsel, although such information is not evidence.  However, the attorneys' positions clearly set forth the positions of the parties as to what was in dispute and the relevant amounts involved.

remediation of the property, which the jury also answered in the affirmative and assigned an amount of $290,800.  *Id.*  The third was whether 9440 proved that AMA failed to mitigate its damages.  *Id.* at 2.  The jury found that 9440 did so in the amount of $1,105,100,64, thereby resulting in a final damages award of $1,208,414.44.

During the jury instructions, the Court conveyed certain facts to which the parties had stipulated, including that 9440 vacated the property on December 15, 2011.  Trial Tr. vol. IX, 1344:16-45:7 (Nov. 4, 2019).[7]  The Court also took judicial notice of arithmetic calculations based on AMA expert Susan Miano's testimony.  *Id.* at 1345-46.  Specifically, the Court took judicial notice that the monthly average of the Lost Rent and Related Damages as per Miano's testimony was $30,697.24.  *Id.* at 1346:9-21.  Finally, with the parties' consent, the Court instructed the jury that the lease ended on June 30, 2017 and that the jury could not award damages beyond that point.  *Id.* at 1348:4-7.  In other words, approximately 66 and 1/2 months were at issue (December 15, 2011 through June 30, 2017).

In closing, AMA's counsel argued that it was entitled to $30,697.24 per month for the entire relevant period.  *Id.* at 1364:8-13.  AMA's attorney also sought $713,00 in remediation costs.  *Id.* at 1366:6-7.  AMA's counsel further argued that 9440 had not proven failure to mitigate.  *Id.* at 1369:4-70:5.

During his closing, 9440's attorney also adopted the $30,697.24 monthly figure for Lost Rent and Related Damages.  *Id.* at 1382:21-25.  As to Lost Rent and Related Damages combined with remediation damages, defense counsel's position was that the damages number was approximately $2,100,000.  *Id.* at 1385:9-18.  Turning to mitigation, 9440's attorney argued that AMA should only receive damages for nine months, meaning that the jury should subtract

---

[7] The pagination in the trial transcripts ran consecutively from the start of the trial.

11

$1,780,000 for failure to mitigate. *Id.* at 1388:18-89:6.  Ultimately, 9440 submitted that the total amount to be awarded AMA was $533,000 (after acknowledging that the $2,100,000 could be $2,300,000). *Id.* at 1389:7-9.

It appears that the jury for the most part accepted defense counsel's argument except as to the amount concerning failure to mitigate.  As to Lost Rent and Related Damages, the jury awarded a total of $2,022,715.08, which approximately reflects that monthly amount of  $30,697.24 over the relevant period.  The jury also awarded remediation damages in the amount of $290,800, leaving a total (before mitigation deduction) of $2,313,515.08, which is in line with defense counsel's assertion that the total amount was approximately $2,300,000.  However, while the jury agreed that AMA failed to mitigate, it found an amount of $1,105,100.64 as opposed to the higher amount urged by 9440.

In sum, AMA recovered $1,208,414.44, rather than $533,000 as suggested by 9440.  The difference between the two amounts is $675,414.44.  $675,414.44 is a substantial amount, but at the same time, AMA asked the jury at the beginning of trial for $8 to $10 million.  Thus, this was not a case in which AMA was seeking an amount close to the verdict award that 9440 refused to pay, thereby forcing a trial.  If 9440 had taken such a position, the Court would award AMA its requested amount.  Instead, the amounts sought by AMA initially at trial were never supported by the evidence.  In other words, AMA took an unreasonable position at the start of the trial because it was an amount that it could not prove – even had it been awarded all of its requested remediation damages.   AMA now seeks $536,002.51 in fees.  The Court reduces the award on a *pro rata* basis based on $675,414.44 (the difference between the $1,208,414.44 awarded and the $533,000 argued by 9440).  The Court therefore awards AMA $299,585.75 in fees.

### C. Expert Witness Fees

Plaintiff additionally seeks to be reimbursed for the expert witness fees incurred during the litigation, also pursuant the terms of Lease. Plf. Fee App. ¶¶ 14-17. Defendants counter that none of Plaintiff's experts aided the jury or were necessary at trial, such that no expert fees should be awarded. Defs' Opp. at 21-25.

The Court will award Plaintiff's expert fees and expenses for Don Elias, John Larkins, Anthony Rinaldi, and Susan Miano. While it does not appear that the jury ultimately credited these experts' testimony because of the amount of the damages awarded, that does not mean that the experts were unnecessary. Messrs. Elias, Larkins and Rinaldi all testified about the contaminated fill on the property and site remediation. Plf. Fee App. Cert. ¶¶ 15(a), (c). And the jury awarded AMA damages for remediation of the property. *Id.*, Ex. A ¶¶ 3-4. Similarly, Ms. Miano testified about Plaintiff's economic damages that resulted from 9440's breach of the Lease, *id.* ¶ 15(d), and the jury also awarded AMA economic damages for the breach, *id.*, Ex. A ¶¶ 1-2. Accordingly, these experts all testified about issues that were relevant and considered by the jury. But this is not the case for Mr. Rinaldi. Mr. Rinaldi's testimony was limited to damage to the building on the property at issue from changed topography. D.E. 289. But AMA's fact witnesses did not establish that the building was actually damaged because of changed topography. Accordingly, Mr. Rinaldi's testimony was unnecessary. The Court, therefore, will not award AMA with Mr. Rinaldi's fees and expenses.

### 2. Bill of Costs

AMA seeks approximately $6,000 in taxable costs, which includes the initial filing fee, the cost of deposition transcripts, and trial exhibits. *See* Plf. Fee App. Cert. ¶ 25. Defendants maintain that AMA is not entitled to any costs because it did not adhere to Local Civil Rule 54.1. Defs'

Opp. at 36-39.  Local Civil Rule 54.1 provides that within thirty days after the entry of a judgment allowing costs, "the prevailing party shall serve on the attorney for the adverse party and file with the Clerk a Bill of Costs and Disbursements[.]"  L. Civ. R. 54.1(a).  A prevailing party must also file a notice of motion that sets forth the hour and date when the application will be made.  L. Civ. R. 54.1(d).  In addition, a bill of costs "shall precisely set forth each item," and the prevailing party's attorney "shall append to the verified Bill of Costs copies of all invoices in support of the request for each item."  L. Civ. R. 54.1(b).  "Upon failure of the prevailing party to comply with this Rule, all costs shall be waived."  L. Civ. R. 54.1(e).

Defendants maintain that AMA failed to file a notice of motion and did not attach its requested deposition costs to the Bill of Costs.  As a result, Defendants continue, Plaintiff's request for taxable costs must be denied pursuant to Local Rule 54.1(e).  Defs' Opp. at 37.  Ordinarily, "[i]f a party does not comply with the local rule, then 'all costs shall be waived.'"  *Torriero v. Sec. Officers, Police & Guards Union Local 1536*, No. 03-5155, 2006 WL 8458245, at *2 (D.N.J. Apr. 13, 2006) (quoting L. Civ. R. 59.1(e)).  But "technical deficiencies may be waived by the Court."  A. Lite, N.J. Fed. Prac. Rules, Cmt. 3 to Rule 54.1 (Gann 2020 ed.).  In addition, "there is a strong presumption that costs should be awarded to the prevailing party."  *Reger v. Nemours Found., Inc.*, 599 F.3d 285, 288 (3d Cir. 2010) (citing *In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 461 (3d Cir. 2000)).

The issues raised by Defendants here are, for the most part, technical issues that will be waived by the Court.  Defendants first argue that Plaintiff improperly filed its request for costs as a motion pursuant to Rule 59(e).  Although Plaintiff should have filed its Bill of Costs with the Clerk of the Court, the Court will address Plaintiff's application because resolution by the Clerk of the Court is appealable to this Court.  Fed. R. Civ. P. 54(d)(1); L. Civ. R. 54.1(a), (h); *see*

*D'Orazio v. Washington Township*, No. 07-5097, 2011 WL 6717427, at *8 (D.N.J. Dec. 21, 2011), *partially remanded on other grounds*, 501 F. App'x 185 (3d Cir. 2012) ("Although § 1920 provides that a Bill of Costs should be submitted to the Clerk of the Court, in the interests of judicial economy, this Court will resolve all issues of costs here."). Next, Defendants take issue with the fact that Plaintiff failed to file a notice of motion specifying the hour and date when the application would be made. Plaintiff, however, filed its motion in conformance with the parties' Consent Order that specifically set a briefing schedule for these motions. *See* D.E. 356. Accordingly, Defendants were clearly aware of Plaintiff's intent to seek costs and when it would file its motions to that effect. The Court disagrees with Defendants' argument that costs should be denied on these grounds.

Defendants also contend that Plaintiff's request for costs should be denied because Plaintiff provided invoices as exhibits to an attorney certification rather than appending them to the Bill of Costs. Defendants similarly take issue with the fact that Plaintiff did not list certain costs in its Bill of Costs but rather, included them in the attorney certification. Again, despite technical violations of the Local Rule, Defendants and the Court have the information needed to verify Plaintiff's request for taxable costs. Defendants have not been unfairly prejudiced by Plaintiff's errors. Although Plaintiff failed to comply with Local Rule 54.1, given the strong presumption that a prevailing party shall be awarded costs, the Court will award Plaintiff taxable costs.

As for the specific amount, Defendants also argue that AMA included depositions that were not used at trial in its list of taxable costs, and that these deposition costs are not recoverable under Local Rule 54.1. Defs' Opp. at 39. Defendants, however, do not explain how much should be deducted from Plaintiff's request. Moreover, § 1920 permits fees for transcripts "necessarily obtained for use in the case" as a taxable cost. 28 U.S.C. § 1920(2). Finally, the Third Circuit

"has confirmed . . . that Local Rule 54.1(g)(7) must give way to § 1920 where the two conflict." *Raab v. City of Ocean City, New Jersey*, No. 11-6818, 2017 WL 2779753, at \*7 (D.N.J. June 26, 2017). Thus, "depositions need only to have 'appeared reasonably necessary to the parties in light of a particular situation existing at the times they were taken.'" *Care One Mgmt., LLC v. United Healthcare Workers E., SEIU 1199*, No. 12-6371, 2020 WL 3482134, at \*6 (D.N.J. June 26, 2020) (quoting *Thabault v. Chait*, No. 85-2441, 2009 WL 69332, at \*7 (D.N.J. Jan. 7, 2009)). AMA contends that the deposition transcripts were "reasonably necessary" to the parties when the depositions were taken, and therefore, it is entitled to these costs. Plf. Reply at 12. The Court agrees, and will award the full amount of requested deposition costs to Plaintiff.

The Court, however, will deduct $436.95 from Plaintiff's requested amount of taxable costs. This amount accounts for costs associated with condensed transcripts, DVDs, and shipping costs, which are typically incurred for the convenience of counsel and are not reimbursable under Local Rule 54.1. *See, e.g.*, *Supernus Pharms., Inc. v. Twi Pharms., Inc.*, No. 15-369, 2018 WL 2175765, at \*8 (D.N.J. May 11, 2018) (explaining that "the Clerk routinely denies such costs [for shipping charges] because this Court has held that they are not recoverable under § 1920"); *Pharm. Res., Inc. v. Roxane Labs., Inc.*, No. 03-3357, 2008 WL 2951173, at \*5 (D.N.J. July 25, 2008) (explaining that when stenographic and video transcripts are sought for the same deposition, both formats must be independently necessary). Plaintiff has the burden of showing why its requested costs fall within § 1920. *Care One Mgmt., LLC*, 2020 WL 3482134, at \*3. But Plaintiff does not address Defendants' argument as to why these specific costs were necessary. As a result, this amount will be deducted from Plaintiff's taxable costs and Plaintiff is awarded $5,643.05 in taxable costs.

### 3.  Prejudgment Interest

An award of prejudgment interest for contract claims is based on equitable principles, and is a matter a discretion for the court.[8]  *County of Essex v. First Union Nat'l Bank*, 891 A.2d 600, 608 (N.J. 2006).  While a court may "suspend the payment of usual prejudgment interest in exceptional cases," it should do so sparingly.  *N. Bergen Rex Transport, Inc. v. Trailer Leasing Co.,* 730 A.2d 843, 851 (1999).  "Exceptional circumstances exist 'only where it is demonstrated that the policy, spirit and intent of the rule are patently inapposite to the circumstances at hand.'" *W.R. Huff Asset Mgmt. Co., L.L.C. v. William Soroka 1989 Trust*, No. 04-3093, 2009 WL 2436692, at *9 (D.N.J. Aug. 6, 2009) (quoting *Salas ex rel. Salas v. Wang*, 846 F.2d 897, 909-10 (3d Cir. 1988)).  The Court concludes that despite Defendants' arguments otherwise, Defs' Opp. at 41, this is not an exceptional case, and prejudgment interest is warranted.

"If a court determines that an award of prejudgment interest is appropriate, the court must then balance the equities to determine an appropriate rate of interest and the date from which interest runs."  *Mylan Inc. v. Smithkline Beecham Corp.*, No. 10-4809, 2014 WL 3519102, at *4

---

[8] Plaintiff argues that as the prevailing party, it is entitled to prejudgment interest pursuant to § 18.1 of the Lease.  *See* Plf. Interest Cert. ¶ 5 (explaining that an award of prejudgment interest is in accordance with the Lease terms).  If the Lease provides for prejudgment interest, the Court must enforce the clear terms of the Lease.  *See Van Note-Harvey Assocs., P.C. v. Township of E. Hanover*, 816 A.2d 1041, 1045 (N.J. 2003) ("In the face of those contractual provisions [to pay prejudgment interest], the Township, as any private entity, must be required to comply with its contractual obligations.").  But the Lease does not provide for prejudgment interest for the entire amount of the damages awarded here.  As discussed, Section 18.1 provides that "the non-defaulting party may . . . make any expenditure or incur any obligation for the payment of money in connection with any obligation owed to the non-defaulting party" and that the defaulting party is responsible for such costs, "with interest thereon at the Applicable Rate."  Plf. Fee App. Cert., Ex. C at § 18.1.  Plaintiff's damages consist of "lost rent, property tax payments, utility payments, insurance payments, and/or other related damages," and costs related to remediation of the property.  Plf. Fee App. Cert., Ex. A at ¶¶ 1, 3.  Accordingly, a portion of Plaintiff's damages, namely the lost rent, was not an expenditure or an incurred obligation.  Plaintiff, therefore, cannot fully recover prejudgment interest through the Lease.

(D.N.J. July 16, 2014).  N.J. Ct. R. 4:42-11(a)(ii) sets the interest rate for judgments in tort actions, which "absent unusual circumstances," is also used for contract-based claims.  *Amba v. Rupari Food Servs., Inc.*, No. 10-4603, 2016 WL 6471019, at \*4 (D.N.J. Oct. 31, 2016).  Defendants do not argue that the Court should apply a different interest rate here.  Accordingly, the Court applies N.J. Ct. R. 4:42-11(a)(ii).

Turning to when interest should run, the Court has discretion to determine when interest starts to accrue.  *First Union Nat'l Bank*, 891 A.2d at 608-09.  Generally, interest begins to accrue from the time payment was initially due.  *Munich Reinsurance Am., Inc. v. Tower Ins. Co. of N.Y.*, No. 09-2598, 2012 WL 1018799, at \*4 (D.N.J. Mar. 26, 2012) (quoting *Siegelman v. Weinstein*, No. A-0738-08T2, 2009 WL 2382248, at \*5 (N.J. App. Div. Aug. 5, 2009)); *see also William A. Graham Co. v. Haughey*, 646 F.3d 138, 147 (3d Cir. 2011) (explaining that prejudgment interest should "be awarded from the date on which the plaintiff first had a right to collect the principal sum—that is, the date of accrual").

AMA maintains that interest should run on December 11, 2011, the date when 9440 improperly terminated its lease with Plaintiff and runs continually through 2019.  Plf. Interest Cert. ¶ 9.  Defendants counter that because the jury determined that AMA failed to mitigate its damages for a three-year period, the Court should find that the breach accrued in December 2014 to account for these three years.  Defendants continue that interest should therefore begin to run in July 2015, which is six months after the breach occurred.  Defs' Opp. at 43.  The jury found that AMA failed to mitigate its damages and cut Plaintiff's damages almost in half.  Plf. Fee App. Cert., Ex. A at ¶¶ 6-7.  Consequently, the damages awarded by the jury already reflect Plaintiff's failure to mitigate.  The Court, therefore, will not further reduced the requested amount of prejudgment interest on these grounds.

Defendants also argue that it would be equitable to further reduce AMA's prejudgment interest because "AMA transformed this simple breach of contract matter into a 41-count RICO action," which resulted in substantial delays in this litigation.   Defs' Opp. at 44.   Although Defendants disagree with AMA's litigation strategy, the Court will not penalize AMA for choices that it was entitled to make.   And, obviously, Plaintiff is not seeking prejudgment interest on counts that were unsuccessful.   Consequently, the Court also refuses to lower AMA's prejudgment interest because it chose to pursue RICO claims.

## III.   CONCLUSION

For the reasons set forth above, Plaintiff's (1) motion for prejudgment interest, D.E. 357, is **GRANTED**, and (2) motion to amend judgment pursuant to Federal Rule of Civil Procedure 59(e) to include taxable costs and an award of counsel fees and litigation expenses, D.E. 364, is **GRANTED in part** and **DENIED in part**.   An appropriate Order accompanies this Opinion.

Dated:          November 9, 2020

John Michael Vazquez, U.S.D.J.